Santos Jiménez Solá, demandante y apelante, v. Isidoro Álvarez y su esposa Juana Aponte, demandados y apelados.

Núm. 9619.—*Sometido:* Mayo 3, 1948.  *Resuelto:* Noviembre 5, 1948.

324

*José M. Valentín Esteves,* abogado del apelante; *E. Martínez Rivera* y *E. Blanco Lugo,* abogados de los apelados.

EL JUEZ PRESIDENTE INTERINO SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelante, alegando ser dueño del solar en que enclava la casa de los apelados, instó este pleito contra ellos en la corte inferior para compelerlos a vendérsela.(1) La corte inferior desestimó la demanda fundándose en que el solar

---

(1) El demandante sostiene que su causa de acción surge de los artículos 297 y siguientes del Código Civil y cita los casos de *Rivera* v. *Santiago,* 56 D.P.R. 381; *Carrasquillo* v. *Ripoll y Maldonado, Int.,* 56 D.P.R. 395 y *Palermo* v. *Corte,* 58 D.P.R. 189.

no pertenecía al demandante y en que los demandados tenían el usufructo del mismo, a virtud de la concesión que hiciera el Municipio de Caguas al que edificó la casa.

Ambas partes presentaron en evidencia sendas certificaciones del Registro de la Propiedad, las cuales revelan los siguientes datos:

En el año 1904 Modesto Solá inscribió a su favor la casa a virtud de expediente posesorio que instó aquel año en la Corte Municipal de Caguas. Alegó en la petición y declararon él y sus testigos que había edificado la casa en un solar del Municipio de Caguas cuyo uso le había concedido el Municipio en el año 1898. De este expediente se dió traslado al Alcalde como representante legal del Municipio(²) y no hizo oposición.

Modesto Solá vendió la casa a Ildefonso Solá Caballero; y al fallecer la esposa de éste le fué adjudicada en pago de su mitad de gananciales. Por escritura de 10 de diciembre de 1923 Ildefonso Solá Caballero la vendió a Ramón Díaz Reyes, quien con el consentimiento de su esposa la hipotecó el mismo día a favor de Bartolomé Esteva. Ejecutada la hipoteca, la casa fué adjudicada a Esteva por escritura de venta judicial de 7 de julio de 1936, siendo inscrita a su favor el 30 del mismo mes.

El 2 de septiembre de 1936, Díaz Reyes reclamó el derecho de hogar seguro que alegó tenía en la casa y anotó la demanda en el Registro de la Propiedad. Estando pendiente este pleito, Bartolomé Esteva vendió la casa a Isidoro Álvarez y su esposa, sus actuales dueños, por escritura de 1ro. de diciembre de 1936 y al siguiente día quedó inscrita a favor de los compradores. Por último, por escritura de 2 de enero de 1937, Ramón Díaz Reyes y su esposa celebraron una transacción con Isidoro Álvarez, como resultado de la cual transigieron el pleito sobre reclamación de hogar seguro. Con motivo de la transacción, Díaz Reyes recibió de

---

(²)Estat. Rev. y Códigos de P. R. (1902), sec. 612.

Isidoro Álvarez la cantidad de $500 en pago de su hogar seguro. Se convino, además, que continuaría viviendo el mirador de la casa hasta el 31 de marzo de 1937 sin pagar canon alguno, y que una vez desocupado el mirador, Álvarez le pagaría $50 en adición a los $500 antes mencionados.

Retrocedamos un poco en la narración de los hechos para ocuparnos de las vicisitudes que, independientemente de la casa, experimentó el solar. Después de constituída la hipoteca a favor de Esteva y siendo entonces Díaz Reyes dueño de la casa, éste, con fecha 27 de mayo de 1935, compró el solar al Municipio de Caguas, por precio de $1.00. No obstante haber comprado el solar, Díaz Reyes ocultó su adquisición llegando al extremo de que al ser desposeído de la casa, si bien reclamó su derecho de hogar seguro, ninguna gestión practicó respecto al solar. Más de cinco años después de haberse pagado su reclamación de hogar seguro, fué que persentó en el Registro de la Propiedad la escritura de compraventa del solar. Habiéndose denegado la inscripción, no recurrió de la nota del Registrador. Su próxima gestión en relación con el solar fué venderlo a Santos Jiménez Solá, el 19 de marzo de 1943. Éste presentó su título el mismo día en el Registro de la Propiedad, siéndole denegada la inscripción por el fundamento de que el solar no había sido inscrito previamente a nombre del vendedor. A fin de facilitar la inscripción de su título, Jiménez Solá presentó entonces la escritura de venta otorgada por el Municipio a favor de Díaz Reyes. También fué denegada su inscripción, entre otros motivos, por resultar del Registro, según expuso el Registrador, que al adquirir Díaz Reyes la casa el 10 de diciembre de 1923, juntamente con ella adquirió lo que el Registrador denominó los "derechos inherentes" al solar; que al hipotecar él la casa a favor de Esteva, la hipoteca se extendió a los derechos que había adquirido sobre el solar, con arreglo al apartado 3 del artículo 107 de la Ley Hipotecaria; que al adjudicarse la

finca hipotecada a Esteva en pago de su crédito, éste adquirió todos los derechos que Díaz Reyes tenía en el inmueble hipotecado, y finalmente porque cuando se presentó la escritura a favor de Jiménez Solá, tanto la casa, como los derechos adquiridos sobre el solar, figuraban en el Registro a favor de Isidoro Álvarez. Recurrió Jiménez Solá para ante este Tribunal. La nota recurrida fué revocada y se ordenó la inscripción de dominio del solar a favor de Díaz Reyes el 14 de julio de 1943. *Jiménez* v. *Registrador*, 62 D.P.R. 353.

Después de resuelto el recurso gubernativo, el Registrador, a instancia de Isidoro Álvarez, con fecha 29 de julio de 1943, extendió una nota al margen de la inscripción primera, convirtiendo en dominio la inscripción de posesión de la casa. En dicha nota también consignó que Álvarez había adquirido el usufructo del solar por el transcurso de veinte años desde la primera inscripción de la finca, sin que la prescripción hubiera sido interrumpida.

Notificado el Registrador de la decisión de este Tribunal recaída en el recurso gubernativo, no cumplió con los términos de la decisión, sino que el 3 de agosto de 1943, por la inscripción undécima, inscribió a favor de Díaz Reyes la nuda propiedad del solar y el mismo día la inscribió a favor de Jiménez Solá por la inscripción duodécima.([3])

Por segunda vez recurrió Jiménez Solá para ante este Tribunal. Su recurso gubernativo fué desestimado el 4 de noviembre de 1943 por falta de jurisdicción. La falta de jurisdicción consistió en que el recurso no perseguía la revisión de una denegación por defecto insubsanable o de una inscripción con defecto subsanable pues el recurrente, lo que en efecto solicitaba, era que se declarase la nulidad de una

---

([3])Es inexplicable la conducta del Registrador. Su obligación era dar cumplimiento a la decisión, independientemente de cuál pudiera ser su opinión personal.

inscripción y se practicara otra nueva, con lo cual podían ser afectados derechos de otras partes. *Jiménez* v. *Registrador,* 62 D.P.R. 547.

Como resultado de la citada decisión, el 27 de junio de 1944, Jiménez Solá radicó en la Corte de Distrito de Caguas, una demanda contra el Registrador interesando una sentencia declaratoria que determinase si fué correcta la actuación de dicho funcionario al inscribir la nuda propiedad y no el dominio pleno del solar a favor del demandante. El 12 de junio de 1945 enmendó la demanda uniendo como demandado a Isidoro Álvarez, pero luego desistió del pleito porque el 6 de julio de 1945, el Registrador, a instancia de Jiménez Solá, canceló por notas marginales las inscripciones 11 y 12 sobre nuda propiedad y el mismo día extendió las inscripciones 13 y 14. Por la primera de éstas inscribió el dominio del solar a favor de Díaz Reyes. Por la segunda, a favor de su sucesor en título, Jiménez Solá. Expuso como fundamento de dichas cancelaciones, el haber incurrido en errores materiales y de concepto al practicar las inscripciones 11 y 12.

Ganada así la batalla del Registro y armado de la inscripción 14 que lo declaraba dueño del solar en pleno dominio, requirió Jiménez Solá a Isidoro Álvarez, el 19 de julio de 1945, para que le vendiese la casa. Rehusó Álvarez. Jiménez Solá instó entonces este pleito y fué fallado a favor del demandado.

La cuestión a resolver es si a la luz de estos hechos Jiménez Solá puede compeler a los demandados a venderle la casa. Dividiremos la discusión de la cuestión legal en dos partes. La primera irá enderezada a determinar qué derecho en el solar, si alguno, adquirió Álvarez cuando compró la casa a Esteva el 1ro. de diciembre de 1936. La segunda, a discutir qué efecto tuvo la inscripción de dominio a favor de Jiménez Solá.

## I

■ Ya hemos visto que en el expediente posesorio tramitado en 1904, Modesto Solá y sus testigos declararon que en 1898, Modesto Solá había construído la casa en el solar cuyo uso le había concedido el Municipio y que notificado del expediente el Alcalde, no hizo oposición. Es verdad que la Ley Municipal de 2 de octubre de 1877(⁴) en vigor hasta el 28 de febrero de 1902, no contenía precepto alguno que autorizase a los municipios a ceder el uso de solares para edificación. Ello no obstante, los municipios hacían tales concesiones. Precisamente, para poner fin en España a esa práctica no autorizada por ley, se expidió el Real Decreto de 25 de mayo de 1900 el cual aclarando el artículo 85 de la referida Ley, declaró que los solares edificables no podían ser cedidos, sino enajenados y que la enajenación debía hacerse por el Estado en subasta pública.

La Ley Municipal de 1877 fué derogada y reemplazada por la "Ley Sobre Municipalidades", aprobada el 1ro. de marzo de 1902.(⁵) Nada proveía ésta con respecto a la concesión de solares. Tampoco lo proveía la "Ley Para Establecer un Sistema de Gobierno Local y para otros fines", aprobada el 8 de marzo de 1906.(⁶) Empero, la Ley núm. 40 aprobada el 7 de marzo de 1912 (pág. 76) autorizando a los municipios para conceder el uso de solares a los que los solicitaren para construir edificios en ellos, en su sec. 4 dispuso:

"Sección 4.—Toda cesión de uso de solares hecha por cualquier municipio a personas particulares, corporaciones o asociaciones, *hasta la fecha de la aprobación de esta ley*(⁷) y que se haya otorgado con el fin de estimular la construcción de edificios y el desarrollo urbano, se declara por la presente válida, siempre que el concesiona-

---

(⁴)El texto de esta Ley puede verse en la Enciclopedia Jurídica Española, t. 23, pág. 165.

(⁵)Estat. Rev. y Códigos de Puerto Rico (1902) págs. 238–265.

(⁶)Compilación de los Estatutos Revisados y Códigos de P. R. (1911) pág. 370.

(⁷)La Ley núm. 40 de 1912 comprueba nuestro aserto de que los municipios venían cediendo el uso de solares sin autoridad legal.

rio haya llenado debidamente las condiciones de la concesión y pagare la contribución sobre la propiedad que en lo sucesivo se impusiere. El consejo municipal será el único juez para resolver si un concesionario ha cumplido o no las condiciones de la concesión; y cuando hubiere de tratar de este particular se procederá en la forma dispuesta en la Sección 2 de esta Ley." (Bastardillas nuestras.)

De esta suerte quedó ratificada la concesión que sin autoridad legal hizo el Municipio de Caguas a Modesto Solá en 1898. No consta de los autos si el concesionario cumplió las condiciones de la concesión, pero la propia sección 4 antes transcrita, expresamente disponía que "el consejo municipal será el único juez para resolver si un cesionario ha cumplido o no las condiciones de la concesión."[3] A mayor abundamiento, el párrafo 19 del artículo 102 de la Ley de Evidencia, establece la presunción *juris tantum* de que las transacciones privadas han sido realizadas con rectitud y en debida forma. No cabe duda, pues, que Modesto Solá adquirió legalmente el uso del solar. Pero tanto por la sección 1 de la Ley núm. 40 de 1912 como por el artículo 70 de la Ley Municipal de 1928, el uso del solar se cede al concesionario y a sus sucesores en título. En consecuencia, demostrado que el uso del solar fué cedido a Modesto Solá, la concesión por ministerio de la ley quedó transmitida respectivamente a sus sucesores en el título de la casa, el último de los cuales es Isidoro Álvarez.

▇▇▇ En términos precisos de Derecho Inmobiliario no podríamos decir con toda propiedad que la hipoteca constituída sobre la casa se extendió al solar. Esto es así porque el solar no es una accesión de la casa. Consecuentemente, no son aplicables los artículos 110 y 111 de la Ley Hipotecaria. Pero en último análisis, como inmediatamente demostraremos, el resultado fué virtualmente el mismo que

---

[3] El artículo 70 de la vigente Ley Municipal (núm. 53) aprobada el 28 de abril de 1928 (pág. 335) otorga a la Asamblea la facultad de revocar la concesión. Su decisión será firme si dentro de treinta días de notificarla a la parte perjudicada, no establece demanda para revisarla en la corte de distrito correspondiente.

si la hipoteca sobre la casa se hubiese extendido al solar. No podemos perder de vista que la concesión del uso del solar fué hecha a Modesto Solá y sus causahabientes sujeta a la condición resolutoria de mantener en el mismo una casa en buenas condiciones.(⁹)   El uso del solar era, pues, un derecho anejo e inseparable de la casa, el cual pasaba con ella a cada dueño sucesivo.   En otras palabras, un dueño de la casa no podía enajenar ésta y a la vez retener para sí o para otro el derecho al uso del solar, pues de acuerdo con la concesión no tenía derecho al uso del solar quien no fuese dueño de la casa.   Siendo ello así, cuando Díaz Reyes celebró el contrato de hipoteca con Esteva, el gravamen se constituyó sobre una casa que llevaba anejo el derecho al uso del solar.   Y al convertirse Esteva en dueño de la casa cuando le fué adjudicada como resultado del procedimiento ejecutivo, juntamente con ella adquirió el derecho al uso del solar.   Claro es que al vender Esteva la casa a Isidoro Álvarez, éste adquirió los mismos derechos que tenía el vendedor.

## II

Cuando Jiménez Solá compró el solar a Díaz Reyes el 19 de diciembre de 1943, hacía siete años que Álvarez venía usándolo, pues él compró la casa a Esteva el 1ro. de diciembre de 1936.   De esto Jiménez Solá tenía conocimiento, si no personal, por lo menos el presuntivo que se deriva del Registro de la Propiedad, pues Álvarez inscribió la compra inmediatamente.   Frente a estos hechos no puede sostenerse que con respecto a Álvarez, Jiménez Solá fuese un adquirente de buena fe.   A lo sumo, Jiménez Solá podrá adquirir el dominio del solar cuando termine el usufructo a que tienen derecho Álvarez y sus sucesores en título.   Por esta razón, si bien hemos calificado de impropia la conducta del

(⁹) El artículo 70 de la Ley Municipal de 1928 prescribe que una vez concedido el uso de un solar, el dueño de la casa en él construída tendrá el uso del mismo durante todo el tiempo que mantuviere allí un edificio en buenas condiciones.

Registrador por desobedecer la decisión de este Tribunal recaída en el primer caso de *Jiménez* v. *Registrador,* supra, debemos admitir, sin embargo, que su opinión al efecto de que sólo procedía la inscripción de la nuda propiedad del solar era correcta, pues eso fué lo único que pudo adquirir Díaz Reyes por no haber inscrito su título oportunamente, y era lo más que de acuerdo con el Registro, podía él transmitir. Se arguye que en el caso de *Jiménez* v. *Registrador,* que acabamos de citar, se ordenó por este Tribunal que el dominio del solar fuese inscrito a nombre de Jiménez Solá, luego de inscribirlo previamente a nombre de Díaz Reyes. Pero es claro que esa decisión no pudo en manera alguna perjudicar a Álvarez, que naturalmente, no había sido parte en el recurso y quien, de acuerdo con el Registro, tenía derechos incompatibles con las pretensiones de Jiménez Solá. Precisamente por esa razón debió este Tribunal abstenerse de conocer de aquel recurso, pues es doctrina bien establecida en Derecho Hipotecario, que el recurso gubernativo no procede contra resoluciones del Registrador que puedan afectar derechos de otras partes interesadas. *Bartolomei* contra *El Registrador de la Propiedad,* 2 S.P.R. 589; *Mollfulleda* v. *El Registrador,* 19 D.P.R. 1001; *Comunidad Religiosa, etc.* v. *Registrador,* 55 D.P.R. 928 y Galindo y Escosura, Legislación Hipotecaria, (ed. 1903) t. 2, pág. 633.

No hemos perdido de vista que por la inscripción 14 se inscribió el pleno dominio del solar a favor de Jiménez Solá. Pero el artículo 33 de la Ley Hipotecaria prescribe que "la inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes". De ahí el principio de que la inscripción no es modo de adquirir derechos, sino de garantizar los ya existentes mediante la publicidad que les da el Registro. Como dice Morell, "la inscripción, si llega a hacerse, no arranca el vicio de nulidad, no da fuerza a lo que no la tiene, ni vida a lo que sin ella nació." Legislación Hipotecaria, t. 2 (2da. ed. 1927) pág. 677.

■ El artículo 297 *et seq.* del Código Civil y los casos citados por el apelante([10]) no son aplicables. Aquí no se trata de un mero edificante de buena fe. El derecho del apelado a permanecer en el uso del solar mientras mantenga en el mismo una edificación en buenas condiciones, está garantizado por el artículo 1 de la Ley núm. 40 de 1912, y por el artículo 70 de la Ley de 1928 antes citados, y en defecto de ellos, por los preceptos del Código Civil relativos al usufructo.

■ Dada la conclusión a que hemos llegado con respecto a los asientos de inscripción 13 y 14, parecería plausible que siguiendo el espíritu de liberalidad que inspira a las nuevas Reglas de Procedimiento, ordenásemos la cancelación de dichos asientos de inscripción. Pero el Reglamento para la Ejecución de la Ley Hipotecaria, en sus artículos 88 al 90, prescribe el procedimiento especial que debe seguirse para que el Tribunal o Juez pueda ordenar la cancelación de las anotaciones o inscripciones. Así vemos que el citado artículo 88 preceptúa que los Jueces y Tribunales ante quienes se reclame la nulidad de una anotación o inscripción, lo pongan en conocimiento del registrador respectivo. Y el mismo artículo ordena al Registrador que en el mismo día que reciba el oficio del Juez o Tribunal, extienda una nota marginal a la anotación o a la inscripción y suple el modelo que debe seguir el registrador para extender la nota marginal. En el artículo 89 se dispone que si se desechare la reclamación de nulidad, también lo notificará el Juez o Tribunal al registrador respectivo, a fin de que éste cancele la nota marginal que queda referida, de ese modo disipando la nube que se cierne sobre el título con motivo de la nota marginal. Por último, dispone el artículo 90 que declarada la nulidad de una anotación o inscripción, el Juez o Tribunal mandará a cancelarla y extender otra nueva en

---

([10]) Véase la nota 1.

la forma que proceda, según la ley. Y agrega ese artículo que el nuevo asiento surtirá efecto desde la fecha en que deba producirlo, según sus respectivos casos.

Los artículos 89 y 90 son una secuela del 88. Pero este último tiene una importancia extraordinaria. Puede darse el caso que se solicite la nulidad de una inscripción por razones que no consten explícitamente del Registro, pero sin embargo, la persona a cuyo favor se haya extendido la anotación o inscripción, tenga conocimiento personal del defecto en el título. En tales circunstancias, si mientras se ventila el pleito de nulidad, un tercero sin conocimiento personal del defecto, adquiere el dominio o un derecho real sobre la finca, sin duda, bajo el artículo 34 de la Ley Hipotecaria, no podría cancelarse el derecho que adquirió ese tercero al amparo de las constancias del Registro. En tal caso, el derecho del que reclamó la nulidad de la anotación o inscripción, quedaría destruído por las disposiciones del artículo 34 de la Ley Hipotecaria. Es en evitación de estos perjuicios, que el Reglamento exige, en su artículo 88, que el registrador sea notificado del pleito sobre nulidad de inscripción o anotación y se ordene a dicho funcionario que el mismo día que reciba la anotación del Juez o Tribunal, extienda la nota marginal que servirá de aviso a todo el mundo de que la validez de la inscripción está siendo controvertida en los Tribunales, y si a pesar de ello otra persona adquiere el dominio o un derecho real sobre la finca, lo hace a su riesgo y si sufre perjuicios a él y solo a él, puede culparse.

En el presente caso se trata de un pleito sobre sentencia declaratoria. No aparece de los autos que el Juez hiciera la notificación al registrador y consta de ellos que no se extendió en el Registro aviso alguno de que la nulidad de tales inscripciones había sido solicitada. En consecuencia, siguiendo las disposiciones de los artículos 88 al 90 del Re-

glamento para la Ejecución de la Ley Hipotecaria, debemos abstenernos, dentro de este pleito, de ordenar la cancelación de dichas inscripciones.

*Procede la confirmación de la sentencia.*