ISIDORO ÁLVAREZ, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE CAGUAS, recurrido.

Número 1300.

*Sometido:* 1 de octubre de 1953. *Resuelto:* 28 de octubre de 1953.

---

*Edelmiro Martínez Rivera* y *Edelmiro Martínez Jr.,* ·abogados del recurrente; el Registrador recurrido no compareció.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

La finca envuelta en este recurso gubernativo, localizada en la ciudad de Caguas, ha sido ya objeto de diversas controversias judiciales, que se han sometido al dictamen de este Tribunal. (*Jiménez* v. *Registrador*, 62 D.P.R. 353; *Jiménez* v. *Álvarez*, 69 D.P.R. 323; *Álvarez* v. *Jiménez y Miranda*, caso número 10,395, de este Tribunal, opinión *Per Curiam* emitida el 8 de enero de 1952.) La historia sintética de esa finca, tan fecunda en la producción de litigios y problemas registrales, es la siguiente, tal como ese historial surge de las constancias del Registro de la Propiedad de Caguas y de la opinión de este Tribunal en el caso de *Jiménez* v. *Álvarez*, 69 D.P.R. 323, de la cual copiamos, de la página 325 en adelante:

"En el año 1904 Modesto Solá inscribió a su favor la casa a virtud de expediente posesorio que· instó aquel año en la Corte Municipal de Caguas. Alegó en la petición y declararon él y sus testigos que había edificado la casa en un solar del Muni-

cipio de Caguas cuyo uso le había concedido el Municipio en el año 1898. De este expediente se dió traslado al Alcalde como representante legal del Municipio([2]) y no hizo oposición.

"Modesto Solá vendió la casa a Ildefonso Solá Caballero, y al fallecer la esposa de éste le fué adjudicada en pago de su mitad de gananciales. Por escritura de 10 de diciembre de 1923 Ildefonso Solá Caballero la vendió a Ramón Díaz Reyes, quien con el consentimiento de su esposa la hipotecó el mismo día a favor de Bartolomé Esteva. Ejecutada la hipoteca, la casa fué adjudicada a Esteva por escritura de venta judicial de 7 de julio de 1936, siendo inscrita a su favor el 30 del mismo mes.

"El 2 de septiembre de 1936, Díaz Reyes reclamó el derecho de hogar seguro que alegó tenía en la casa y anotó la demanda en el Registro de la Propiedad. Estando pendiente este pleito, Bartolomé Esteva vendió la casa a Isidoro Álvarez y su esposa, sus actuales dueños, por escritura de 1ro. de diciembre de 1936 y al siguiente día quedó inscrita a favor de los compradores. Por último, por escritura de 2 de enero de 1937, Ramón Díaz Reyes y su esposa celebraron una transacción con Isidoro Álvarez, como resultado de la cual transigieron el pleito sobre reclamación de hogar seguro. Con motivo de la transacción, Díaz Reyes recibió de Isidoro Álvarez la cantidad de $500 en pago de su hogar seguro. Se convino, además, que continuaría viviendo el mirador de la casa hasta el 31 de marzo de 1937 sin pagar canon alguno, y que una vez desocupado el mirador, Álvarez le pagaría $50 en adición a los $500 antes mencionados.

"Retrocedamos un poco en la narración de los hechos para ocuparnos de las vicisitudes que, independientemente de la casa, experimentó el solar. Después de constituída la hipoteca a favor de Esteva y siendo entonces Díaz Reyes dueño de la casa, éste, con fecha 27 de mayo de 1935, compró el solar al Municipio de Caguas, por precio de $1.00. No obstante haber comprado el solar, Díaz Reyes ocultó su adquisición llegando al extremo de que al ser desposeído de la casa, si bien reclamó su derecho de hogar seguro, ninguna gestión practicó respecto al solar. Más de cinco años después de haberse pagado su reclamación de hogar seguro, fué que presentó en el Registro de la Propiedad la escritura de compraventa del solar. Habiéndose denegado la inscripción, no recurrió de la nota del Registrador. Su próxima gestión en relación con el solar fué ven-

derlo a Santos Jiménez Solá, el 19 de marzo de 1943. Éste presentó su título el mismo día en el Registro de la Propiedad, siéndole denegada la inscripción por el fundamento de que el solar no había sido inscrito previamente a nombre del vendedor. A fin de facilitar la inscripción de su título, Jiménez Solá presentó entonces la escritura de venta otorgada por el Municipio a favor de Díaz Reyes. También fué denegada su inscripción, entre otros motivos, por resultar del Registro, según expuso el Registrador, que al adquirir Díaz Reyes la casa el 10 de diciembre de 1923, juntamente con ella adquirió lo que el Registrador denominó los "derechos inherentes" al solar; que al hipotecar él la casa a favor de Esteva, la hipoteca se extendió a los derechos que había adquirido sobre el solar, con arreglo al apartado 3 del artículo 107 de la Ley Hipotecaria; que al adjudicarse la finca hipotecada a Esteva en pago de su crédito, éste adquirió todos los derechos que Díaz Reyes tenía en el inmueble hipotecado, y finalmente porque cuando se presentó la escritura a favor de Jiménez Solá, tanto la casa, como los derechos adquiridos sobre el solar, figuraban en el Registro a favor de Isidoro Álvarez. Recurrió Jiménez Solá para ante este Tribunal. La nota recurrida fué revocada y se ordenó la inscripción de dominio del solar a favor de Díaz Reyes el 14 de julio de 1943. *Jiménez* v. *Registrador*, 62 D.P.R. 353.

"Después de resuelto el recurso gubernativo, el Registrador, a instancia de Isidoro Álvarez, con fecha 29 de julio de 1943, extendió una nota al margen de la inscripción primera, convirtiendo en dominio la inscripción de posesión de la casa. En dicha nota también consignó que Álvarez había adquirido el usufructo del solar por el transcurso de veinte años desde la primera inscripción de la finca, sin que la prescripción hubiera sido interrumpida.

"Notificado el Registrador de la decisión de este Tribunal recaída en el recurso gubernativo, no cumplió con los términos de la decisión, sino que el 3 de agosto de 1943, por la inscripción undécima, inscribió a favor de Díaz Reyes la nuda propiedad del solar y el mismo día la inscribió a favor de Jiménez Solá por la inscripción duodécima. ([3])

"Por segunda vez recurrió Jiménez Solá para ante este Tribunal. Su recurso gubernativo fué desestimado el 4 de noviembre de 1943 por falta de jurisdicción. La falta de jurisdicción consistió en que el recurso no perseguía la revisión de una denegación por defecto insubsanable o de una inscripción con defecto

subsanable pues el recurrente, lo que en efecto solicitaba, era que se declarase la nulidad de una inscripción y se practicara otra nueva, con lo cual podían ser afectados derechos de otras partes, *Jiménez* v. *Registrador,* 62 D.P.R. 547.

"Como resultado de la citada decisión, el 27 de junio de 1944, Jiménez Solá radicó en la Corte de Distrito de Caguas, una demanda contra el Registrador interesando una sentencia declaratoria que determinase si fué correcta la actuación de dicho funcionario al inscribir la nuda propiedad y no el dominio pleno del solar a favor del demandante. El 12 de junio de 1945 enmendó la demanda uniendo como demandado a Isidoro Álvarez, pero luego desistió del pleito porque el 6 de julio de 1945, el Registrador, a instancia de Jiménez Solá, canceló por notas marginales las inscripciones 11 y 12 sobre nuda propiedad y el mismo día extendió las inscripciones 13 y 14. Por la primera de éstas inscribió el dominio del solar a favor de Díaz Reyes. Por la segunda, a favor de su sucesor en título, Jiménez Solá. Expuso como fundamento de dichas cancelaciones, el haber incurrido en errores materiales y de concepto al practicar las inscripciones 11 y 12.

"Ganada así la batalla del Registro y armado de la inscripción 14 que lo declaraba dueño del solar en pleno dominio, requirió Jiménez Solá a Isidoro Álvarez, el 19 de julio de 1945, para que le vendiese la casa. Rehusó Álvarez. Jiménez Solá instó entonces este pleito y fué fallado a favor del demandado."

Como hemos visto, se habían planteado dos problemas, uno en cuanto a la casa y el otro en lo relativo al solar. Es indudable que Ramón Díaz Reyes y su esposa se desprendieron válidamente de todos sus derechos en cuanto a la casa. Pero el presente recurso gubernativo se limita al solar. En el último caso citado de *Jiménez* v. *Álvarez* se resolvió que el dueño de la casa, Isidoro Álvarez, también era dueño del usufructo del solar y que Ramón Díaz Reyes y su esposa eran dueños solamente de la nuda propiedad del solar, y que, por lo tanto, Jiménez Solá, quien había comprado el solar de Díaz Reyes, tenía derecho solamente a la nuda propiedad, al igual que sus vendedores. En el mismo caso citado de *Jiménez* v. *Álvarez* este Tribunal resolvió que eran nulos, por lo tanto, los asientos de inscripción 13 y 14, en virtud

de los cuales se había inscrito el pleno dominio sobre el solar en favor de Díaz Reyes (inscripción 13) y de su comprador Jiménez Solá (inscripción 14). Dijo este Tribunal lo siguiente, a la página 333 del tomo 69:

"Dada la conclusión a que hemos llegado con respecto a los asientos de inscripción 13 y 14, parecería plausible que siguiendo el espíritu de liberalidad que inspira a las nuevas Reglas de Procedimiento, ordenásemos la cancelación de dichos asientos de inscripción. Pero el Reglamento para la Ejecución de la Ley Hipotecaria, en sus artículos 88 al 90, prescribe el procedimiento especial que debe seguirse para que el Tribunal o Juez pueda ordenar la cancelación de las anotaciones o inscripciones."

Se sigue diciendo que en ese pleito de sentencia declaratoria el registrador no fué notificado, de acuerdo con los artículos 88 al 90, de que se hubiera radicado litigio alguno solicitando la nulidad de tales inscripciones, no habiéndose extendido nota marginal alguna en esos asientos en cuanto a tal litigio, y que, por lo tanto, este Tribunal no podía ordenar la cancelación de las inscripciones 13 y 14.

A tono con las observaciones expresadas por este Tribunal, Isidoro Álvarez radicó entonces en la antigua Corte de Distrito de Caguas una demanda contra Santos Jiménez Solá y Armando A. Miranda, solicitando la cancelación de las inscripciones doce, trece y catorce del solar, que aparecían practicadas a favor de Ramón Díaz Reyes y Jiménez Solá, respectivamente. En esta ocasión se cumplieron los requisitos de los artículos 88 al 90 del Reglamento Hipotecario. Armando A. Miranda fué incluído como demandado, alegándose que este último había formalizado e inscrito a su favor (inscripción 15) una hipoteca sobre el mismo solar, no siendo él un tercero. La anterior Corte de Distrito de Caguas finalmente declaró con lugar la demanda contra Jiménez Solá y ordenó la cancelación de los asientos de inscripción 12, 13 y 14, indicando la Corte que así lo hacía de acuerdo con lo resuelto en el caso de *Jiménez* v. *Álvarez*,

supra, en que, como hemos visto, este Tribunal había indicado que esas inscripciones debían ser canceladas. La Corte de Caguas declaró sin lugar la demanda en cuanto a Armando A. Miranda, resolviendo que este último era un tercero. La sentencia de la Corte de Caguas fué confirmada por este Tribunal, el 8 de enero de 1952, mediante opinión *Per Curiam*, en el caso número 10,395. Al convertirse en firme tal sentencia, la Corte de Caguas expidió un mandamiento dirigido al Registrador de la Propiedad de Caguas, requiriéndole para que procediera a cancelar las inscripciones doce, trece y catorce, acompañándose a este mandamiento una copia certificada de la sentencia y de las Conclusiones de Hecho y de Derecho del tribunal. El Registrador practicó la cancelación de la inscripción 14, que aparecía a favor de Jiménez Solá, pero en virtud de nota al efecto se negó a cancelar la inscripción 13, que aparecía a favor de Ramón Díaz Reyes y su esposa, "por no haberse hecho a éstos parte en el procedimiento." Isidoro Álvarez ha elevado el presente recurso gubernativo ante este Tribunal, y ha impugnado la actuación del Registrador al negarse a cancelar la inscripción 13.

■ Efectivamente, los esposos Díaz Reyes, beneficiarios titulares del asiento de inscripción 13, no eran partes demandadas en la acción de cancelación de los asientos 12, 13 y 14, y ellos no fueron oídos ni vencidos en ese juicio. Un Registrador puede negarse a acatar un mandamiento judicial de cancelación de asientos de inscripción de existir obstáculos registrales auténticos y legítimos, y concretamente los provocados por el tracto sucesivo, como, por ejemplo, el no haber sido parte en el juicio los titulares inscritos a quienes afecte la cancelación, de estar vigentes en el Registro los derechos de esos titulares que no han sido oídos ni vencidos en el juicio. Roca Sastre, Derecho Hipotecario, Tomo 2, pág. 340; Morell, Legislación Hipotecaria, Tomo 3, pág. 475, 478, 479, 481, 482; cf. *Pérez* v. *Registrador*, 50 D.P.R. 289. Una modalidad de ese postulado la constituye la regla

al efecto de que no es inscribible un expediente de dominio en tanto envuelva la cancelación registral de asientos contradictorios de dominio, si los titulares de esos derechos contradictorios inscritos no han sido oídos ni vencidos en un juicio plenario. *Bermúdez* v. *Registrador*, 74 D.P.R. 151, 154; *Benítez* v. *Registrador*, 71 D.P.R. 563; *Mercado* v. *Registrador*, 68 D.P.R. 138; *Rodríguez* v. *Registrador*, 65 D.P.R. 653.

Sin embargo, del propio Registro surge que Díaz Reyes y su esposa habían ya transferido y enajenado todos sus derechos a Jiménez Solá, habiéndose registrado tal transferencia en virtud de la inscripción 14. La inscripción de tal transferencia de los derechos reales sobre el solar implicó necesariamente la extinción de la inscripción a favor de los esposos Díaz Reyes, esto es, la inscripción 14 conllevó la extinción de la inscripción 13. El artículo 77 de la Ley Hipotecaria dispone lo siguiente:

"Artículo 77.—Las inscripciones no se extinguen en cuanto a tercero, sino por su cancelación o por la inscripción de la transferencia del dominio o derecho real inscrito a favor de otra persona."

La inscripción de la transferencia de los derechos reales sobre el solar en favor de Jiménez Solá extinguió la inscripción a favor de los esposos Díaz Reyes, esto es, la inscripción 13 perdió toda su efectividad jurídica y perdió toda su vigencia y actualidad en el registro. Roca Sastre, ob. cit., Tomo 3, pág. 321; Morell, ob. cit., Tomo 3, pág. 368. Tal como se indica en la obra de don Luis Muñoz Morales, Lecciones de Derecho Hipotecario, Tomo 1, pág. 306, "la extinción significa desaparición, invalidación o cesación de existencia de una cosa, y tratándose de las inscripciones y anotaciones se origina por transferencia o por cancelación . . . la inscripción que en virtud de la transferencia se verifica a nombre del adquirente extingue y deja sin efecto automáticamente la anterior inscripción a nombre del trasmitente:

se extingue una para dar vida a la otra, ya que no es posible la subsistencia de dos inscripciones contradictorias de la misma finca o derecho a favor de distintas personas." La transferencia registrada en la inscripción 14 implicó que la inscripción 13 dejó de tener efecto, convirtiéndose en inoperante en su función específica. Roca Sastre, ob. cit., Tomo 3, pág. 318. El artículo 77 transcrito tiene un valor extintivo total, y así lo ha resuelto la Dirección General de Registros de España. Roca Sastre, ob. cit., Tomo 3, pág. 321; resoluciones de la Dirección de 22 de noviembre de 1905, 29 de enero de 1941 y 22 de mayo de 1943, citadas por Roca Sastre.

■■ En vista de lo anteriormente expuesto, habiendo quedado extinguida la inscripción 13, no había obstáculo registral alguno a su cancelación, y no era necesario el que se le demostrase al Registrador que los esposos Díaz Reyes hubiesen sido partes en el procedimiento ventilado en la Corte de Caguas, ya que los derechos de ellos ya no estaban vigentes en el Registro, por haber sido extinguidos.[1] Los asientos en favor de los esposos Díaz Reyes no eran contradictorios a los derechos de Isidoro Álvarez, porque habían dejado de existir o de tener valor o eficacia jurídica debido a su extinción.

No se trata en este caso de derechos anteriores inscritos que retienen toda su vigencia y que no estaban extinguidos, como ocurría en el caso de *Pérez* v. *Registrador*, supra, referente a embargos previamente anotados, que no estaban extinguidos, ni se trata de un derecho de hipoteca inscrito anteriormente, que aún se mantenía incólume en el Registro, como ocurrió en el caso resuelto por la Dirección General de Registros de España el 23 de julio de 1914, ni se trata de derechos posteriores inscritos en el Registro, con

---

[1] El artículo 77 de la Ley Hipotecaria se refiere a extinción en cuanto a terceros. Pero el hecho en sí de la transferencia conlleva, con mayor significación, la extinción entre las partes interesadas, o sea, entre Díaz Reyes y Jiménez Solá, independientemente de terceros. (Morell, ob. cit., Tomo 3, pág. 372).

toda su virtualidad, como ocurrió en el caso resuelto por la Dirección el 26 de julio de 1916. En todos esos casos se considero esencial para la inscripción de un mandamiento judicial de cancelación el que los titulares de tales derechos hubiesen sido oídos y vencidos en el juicio que dió lugar al mandamiento. En el caso que nos ocupa los derechos de los esposos Díaz Reyes habían quedado extinguidos.

*Debe revocarse la nota del registrador y ordenarse la cancelación del asiento de inscripción número 13, objeto de este recurso gubernativo.*

El Juez Asociado Sr. Marrero no intervino.