Julio C. Rivera Ilarraza, demandante y recurrido, *v.* Municipio de Fajardo y su Alcalde Osvaldo Molina Vázquez, demandados y recurrentes.

*Número:* R-72-267        *Resuelto:* 4 de febrero de 1975

*Gilberto Gierbolini, Procurador General, J. F. Rodríguez Rivera, Procurador General Interino, y Adolfo J. Vila, Procurador*

*General Auxiliar,* abogados de los recurrentes; *Israel Delgado Ramos* y *José M. Lugo Zalduondo,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

El Municipio de Fajardo, mediante dos Ordenanzas aprobadas por su Asamblea Municipal en 1968, autorizó al Alcalde a vender, sin la celebración de subasta pública, dos solares urbanos a una misma persona—el aquí recurrido. Uno de dichos solares comprende 171 metros cuadrados y el otro 947. Ambos solares habían sido tasados por el Departamento de Hacienda y la Junta de Planificación había autorizado su segregación.

La Ordenanza Núm. 26, que autorizó la venta del solar más pequeño de los dos, expresa que el comprador es "ocupante" del solar allí descrito. La Ordenanza Núm. 28, que autorizó la venta del otro solar, dice que el comprador es "dueño" del mismo. Esto es un error, pues si el recurrido hubiese sido dueño del solar no tenía que comprarlo. Lo que probablemente explica ese lapso es que en dicho solar—el de mayor cabida—radica una casa, la cual era o es propiedad del recurrido, aunque según surge de los autos él no la vive ni vive tampoco la que radica en el solar objeto de la Ordenanza Núm. 26. La había comprado a la sucesión de su padre, a quien había pertenecido antes.

Las antes mencionadas Ordenanzas Núms. 26 y 28 fueron aprobadas por la Asamblea Municipal de Fajardo el 31 de diciembre de 1968 y aprobadas y firmadas por la Alcaldesa, Honorable María Socorro Pérez de Gaos, el día 3 de enero de 1969. Como se verá, la aprobación de dichas Ordenanzas no fueron actos crasa o *prima facie* ilegales debido a la existencia de los Arts. 98 y 99 de la Ley Municipal, Ley Núm. 142 de 21 julio 1960; 21 L.P.R.A. secs. 1651 y 1652. El primero de dichos artículos trata sobre la venta sin subasta pública a usufructuarios de solares municipales, y el segundo dispone sobre la venta, también sin subasta, de solares municipales

edificados. Más adelante nos ocuparemos de dichas disposiciones.

El recurrido adquirió el solar objeto de la Ordenanza Núm. 26 y cuando, posteriormente, requirió del nuevo Alcalde, Honorable Osvaldo Molina Vázquez, que otorgase la escritura sobre la venta del solar objeto de la Ordenanza Núm. 28 el Alcalde se negó a hacerlo basándose en que ya el recurrido había comprado un solar del Municipio bajo los términos especiales del Art. 99 de la Ley Municipal y que no podía en ley comprar un segundo solar bajo dichos términos.

Consultado que fuese el Secretario de Justicia por el Secretario Municipal de Fajardo sobre la legalidad de la venta de los mencionados solares al Dr. Rivera Ilarraza, aquél emitió una opinión en 28 de julio de 1971, en la cual, luego de expresar que la consulta se contraía a la legalidad de la Ordenanza 28, opinó que las ordenanzas municipales, igual que las leyes, se presumen válidas hasta tanto un tribunal competente no decida lo contrario. Por esa razón se negó a opinar sobre la legalidad de la Ordenanza y, por consiguiente, sobre la legalidad de la venta que dicha ordenanza autorizaba.

Eventualmente el recurrido demandó al Municipio de Fajardo y a su Alcalde para que cumpliesen con la Ordenanza Núm. 28 y otorgasen la mencionada escritura. El Tribunal Superior declaró con lugar la demanda y ordenó al Alcalde de Fajardo a venderle el solar al allí demandante y aquí recurrido.

El Municipio de Fajardo, representado ante nos por el Procurador General, hace dos señalamientos de error. En el primero arguye que el tribunal de instancia erró al concluir que el recurrido es usufructuario del solar en cuestión sin que hubiese prueba al respecto. En el segundo señalamiento expresa que el tribunal erró al aplicar el anterior texto del Art. 99 de la Ley Municipal sin tener en cuenta la enmienda hecha al mismo por la Ley Núm. 119 de 24 de junio de 1968;

21 L.P.R.A. sec. 1652. Suplemento de 1973. Vamos a comenzar por el segundo señalamiento.

Como se sabe, en los comienzos de la colonización de América los gobiernos metropolíticos cedían terreno a los colonizadores para estimular la colonización de sus nuevos dominios. Aún antes, en España, durante la Reconquista, los reinos católicos en ocasiones hicieron cosa parecida para fomentar la repoblación por cristianos de tierras ganadas a los musulmanes. En cuanto a Puerto Rico, encontramos ya legislación específica en la Ordenanza 127, promulgada por Felipe II, mediante la cual se dispuso lo siguiente:

"Repártanse los solares por suertes a los pobladores, continuando desde los que corresponden a la plaza mayor, y los demás queden para Nos hacer merced de ellos a los que de nuevo fueren a poblar, o lo que fuere nuestra voluntad: y ordenamos, que siempre se lleve hecha la planta del Lugar que se ha de fundar." [1]

Aunque en Puerto Rico no se padece de exceso de investigaciones y estudios sobre las instituciones patrias, no es éste el lugar para hacer un ordenado recuento de las distintas disposiciones legislativas que sobre el asunto objeto de este pleito han regido aquí y sobre su desenvolvimiento. El interesado puede ver las Leyes Municipales que rigieron aquí durante la época española y las posteriores.

Como parte de la "Leyenda Negra" que sobre España se impuso a muchas generaciones en Puerto Rico, mediante una escuela pública desnaturalizante, fue sembrar la impresión de que España gobernaba su imperio a capricho, en forma improvisada y personal, conviene que nos detengamos aquí siquiera un momento. Ya hemos visto la disposición expresa que en cuanto a la cesión de solares municipales se dictó en el siglo 16. Forma parte dicha disposición del Título VII,

---

[1] *Recopilación de Leyes de los Reynos de las Indias*, 4ta. ed. (1791), reimpreso por el Consejo de la Hispanidad en 1943, Libro III, Título VII, Ley xi, pág. 22.

antes citado, cuyo título trataba "De la población de Ciudades y Villas." Los que lean dicho título encontrarán allí disposiciones sobre lo siguiente: que el terreno y cercanías (de las ciudades y villas) sea abundante y sano; que se procure fundar cerca de los ríos; que las pescaderías, tenerías y otros establecimientos que causan inmundicias y mal olor se establezcan hacia el río o el mar "para que con más limpieza y sanidad se conserven las poblaciones"; que en los lugares fríos las calles sean anchas (para que dé el sol) y en los calientes angostas (para que haya sombra); una requiriendo que se levante un plano de la villa que se ha de fundar; y muchas disposiciones más que, aparte de constituir normas de planificación y urbanismo propias de la época, evidencian una genuina y cálida preocupación por las nuevas poblaciones hijas de España.

Mediante el Real Decreto de 2 de octubre de 1877, autorizado por la ley aprobada por las Cortes en esa misma fecha, se promulgó la Ley Municipal de dicha fecha y en la misma se dispuso que se aplicaría dicha ley "a la provincia de Puerto Rico, con arreglo a las disposiciones contenidas en el Art. 89 de la Constitución de la Monarquía." [2] Es esa la Ley Municipal que se menciona en *Jiménez* v. *Alvarez*, 69 D.P.R. 323, 329 (1948). Veinte años más tarde, mediante el Real decreto de 31 de diciembre de 1896, la Reina Regente María Cristina, autorizada para la ley del 15 de marzo de 1895, y a propuesta del Ministro de Ultramar y de acuerdo con el Consejo de Ministros, aprobó para Puerto Rico la Ley Municipal de 1896. Dicha ley derogó las leyes anteriores relativas al régimen municipal de este país. [3] Esa ley de 1896 fue la que quedó derogada por la Ley de 1902.

---

[2] *Colección Legislativa de España*, Tomo CXIX, 2da. parte, (1878), págs. 748 y ss.

[3] *Colección Legislativa de España*, Tomo CLX, 1ra. parte, (1905), págs. 972 y ss.

Sobre la legislación posterior a la española, comenzando con la Ley Sobre Municipalidades de 1ro. de marzo de 1902 —Estatutos Revisados y Códigos de Puerto Rico de 1902, págs. 238 y ss.—y las leyes subsiguientes, pueden verse las relacionadas bajo el epígrafe "Ley Anterior," en la extensa anotación que aparece bajo 21 L.P.R.A. sec. 1101, Tomo 4A, ed. 1961, pág. 744.

El segundo error señalado se cometió. Primero señalemos que, desde luego, hoy día en Puerto Rico—uno de los países de mayor densidad poblacional del mundo—ya no existe la necesidad de donar o ceder solares municipales a particulares con el fin de atraer más pobladores.([4]) Como dijimos antes, tampoco podemos detenernos a narrar las variantes que nuestra legislación de los últimos años ha ido adoptando y modificando sobre este asunto. Podemos afirmar que hoy día la norma general es que la venta de propiedad pública, y específicamente de la propiedad pública municipal, se lleve a cabo mediante subasta. 21 L.P.R.A. sec. 1464.

En efecto, como se expresa en el segundo señalamiento, la ilustrada Sala sentenciadora aplicó el texto anterior del Art. 99 de la Ley Municipal, sin tener en cuenta que el mismo había sido enmendado. El Art. 99 que el tribunal consideró e incluyó en su opinión era el artículo original de la Ley Municipal de 1960, Ley Núm. 142 de julio de dicho año. Dicho artículo leía como sigue:

"Cuando se trata de solares edificados que estén cedidos por los municipios en usufructo por tiempo indeterminado o cuando

---

([4]) Por ejemplo, véase la población por milla cuadrada de los siguientes países tomados al azar: Puerto Rico 831; E.U. 58; España 17; Venezuela 177; Chile 31; Haití 473; Cuba 198; Costa Rica 94; Canadá 6; Rep. Dom. 229; Arabia Saudita 10; Jamaica 454; Mexico 69; Suiza 403; Reino Unido 592; Suecia 47; Italia 467; Israel 385; Australia 4.—*Statistical Abstract*, 1974.

Para llegar a la presente población ha tomado 10,000 años. Se calcula que al paso que va el incremento, la población del mundo se duplicará en solo 35 años.—Fondo Monetario Internacional, "Población," *Finanzas y Desarrollo*, dic. 1973, pág. 22.

se trate de solares edificados que se encuentren en posesión de particulares, podrá efectuarse la venta al usufructuario o poseedor sin necesidad de subasta, siempre que las ventas sean aprobadas por las dos terceras partes del número total de miembros de que se componga la asamblea municipal. En igual forma la asamblea municipal podrá autorizar la venta de dichos solares a arrendatarios, ocupantes o inquilinos de los solares o casas siempre que así lo disponga por ordenanza al efecto."

En 24 de junio de 1968, mediante la Ley Núm. 119, dicho Art. 99 fue enmendado para que leyese así:

"Cuando se trate de solares edificados que estén cedidos por los municipios en usufructo por tiempo indeterminado o cuando se trate de solares edificados que se encuentren en posesión de particulares, podrá efectuarse la venta al usufructuario o poseedor de hecho, arrendatario, ocupante o inquilino, sin necesidad de subasta, conforme a las normas y tipos que apruebe la Asamblea Municipal, según se dispone en el Artículo 98 de esta Ley y pudiendo el Alcalde llevar a cabo las transacciones individuales sin adicional participación de la Asamblea."

Como la Ordenanza 28 fue aprobada por la Asamblea Municipal en 31 de diciembre de 1968 y firmada por el Alcalde el 3 de enero de 1969, ya, desde luego, estaba en vigor el texto nuevo del Art. 99 según enmendado por la Ley Núm. 119 de 24 de junio de 1968, cuya ley tuvo vigencia inmediata.

■ Dicha Ley Núm. 119 tuvo dos propósitos y efectos: uno de naturaleza procesal y otro de naturaleza sustantiva. El primero fue que las ventas allí autorizadas ya no tienen que aprobarse en cada caso en particular por la Asamblea Municipal, como lo exigía la antigua redacción del Art. 99. Según el nuevo texto, el Alcalde está autorizado a llevar a cabo las transacciones individuales sin intervención de la Asamblea Municipal pero debe actuar conforme a las normas y tipos que para ese propósito apruebe la Asamblea. El otro propósito y efecto de la mencionada Ley Núm. 119 fue requerir que la venta de esos solares se haga solamente a com-

pradores que estén ocupando físicamente como cuestión de hecho dichos solares y no simbólicamente mediante el concepto jurídico de usufructuario. Es claro que el usufructuario de un inmueble no tiene necesariamente que vivirlo u ocuparlo pero el poseedor "de hecho" sí tiene que así hacerlo.

■ Veamos por qué decimos que el nuevo texto del Art. 99 de la Ley Municipal exige, en casos como el presente, que el poseedor, arrendatario, ocupante o inquilino, estén real o físicamente ocupando o poseyendo la propiedad.

El Departamento de Hacienda de Puerto Rico tiene una Oficina o Negociado de Asuntos Municipales. En una opinión del Secretario de Justicia dirigida al Gobernador, con fecha de 5 de agosto de 1969, en la cual se discute la enmienda que el Art. 99 de la Ley Municipal sufrió por virtud de la Ley Núm. 119 de 1968, el Secretario de Justicia cita un Memorando Explicativo del Secretario de Hacienda de 27 de septiembre de 1967, relativo al anteproyecto que finalmente se convirtió en la Ley Núm. 119 y de dicho memorando el Secretario de Justicia cita lo siguiente:

"Finalmente, y a los efectos de cerrar la puerta a especulaciones con estos solares, estamos cualificando la posesión de que debe gozar la persona que aspira a comprar uno de estos solares. A estos efectos hemos insertado, [*sic*] la palabra 'de hecho' después de 'poseedor.' Con la cualificación apuntada se asegura que solo aquellas personas que ocupen físicamente uno de estos solares pueden adquirirlos al amparo de esta ley. La Comisión de lo Jurídico Civil del Senado, en su informe de 10 de mayo de 1968 comentó la referida enmienda en los siguientes términos: 'Vuestra Comisión entiende que, de aprobarse la medida, se cerrarían las puertas a especulaciones con estos solares, ya que se cualifica la posesión que debe gozar la persona que aspire a comprar uno de estos solares. Ello se logra el requerir como condición que el aspirante ocupe físicamente el inmueble como "poseedor de hecho" para poder adquirirlo.' La conclusión lógica es que una persona no puede ocupar físicamente más de un solar."

Concluyó el Secretario de Justicia en la opinión antes citada que no se le podía vender a un solicitante—que no era el aquí recurrido—más de un solar municipal a tenor con los nuevos Arts. 98 y 99 de la Ley Municipal.

En cuanto al propósito de la enmienda del año 1968 efectuada por la Ley Núm. 119 existen dos informes, uno de la Comisión de lo Jurídico Civil del Senado y el otro de la Comisión de Gobierno Estatal y Municipal del mismo cuerpo. 22 *Diario de Sesiones*, págs. 1705–1706 (1968).

Sobre el punto que nos ocupa en el primer Informe mencionado, se expresa lo siguiente:

"Vuestra Comisión entiende que, de aprobarse la medida, se cerrarían las puertas a especulaciones con estos solares, ya que se cualifica la posesión que debe gozar la persona que aspire a comprar uno de estos solares. Ello se logra al requerir como condición que el aspirante ocupe físicamente el inmueble como 'poseedor de hecho' para poder adquirirlo."

El segundo Informe—el de la Comisión de Gobierno Estatal y Municipal—dice:

"Finalmente, y a los efectos de cerrar la puerta a especulaciones con estos solares, estamos cualificando la posesión de que debe gozar la persona que aspire a comprar uno de estos solares. A estos efectos hemos insertado la palabra 'de hecho' después de 'poseedor'. Con la cualificación apuntada se asegura que sólo aquellas personas que ocupen físicamente uno de estos solares pueden adquirirlos al amparo de esta ley."

Es cierto que en la Ley Núm. 119 se hizo la salvedad de que los solares que estaban en trámite se regirían por "el procedimiento en vigor antes de la fecha de vigencia de esta ley," pero dicha ley limitó esa salvedad a los solares cuyas ventas ya estuviesen autorizadas por las Asambleas Municipales y, desgraciadamente para el recurrido, la venta del solar aquí en cuestión no estaba autorizada por la Asamblea Municipal para la fecha de vigencia de la Ley Núm. 119, sino

que fue autorizada por la Asamblea seis meses después, en diciembre 31 de 1968.

En cuanto al primer señalamiento, también se cometió el error. El recurrido entiende que él es usufructuario del solar. Aunque somos de opinión que la citada Ley Núm. 119, de su texto y a la luz de su clara intención legislativa hace irrelevante si es usufructuario o no, si no es además poseedor "de hecho" o físico del solar, nada hay que pruebe que el recurrido es usufructuario del solar. La propia Ordenanza 28, como vimos, expresa por error que el recurrido es "dueño" del solar que interesaba comprar, y también en uno de sus Por Cuantos la Ordenanza dice que "no existe evidencia de que el uso y aprovechamiento del mismo [se refiere al solar] le haya sido concedido [al recurrido] con anterioridad a la fecha en que entró en vigor la Ley Municipal Núm. 142." Dicha ley entró en vigor en 9 enero 1961. Luego, no existe evidencia, dice en otras palabras la Ordenanza—sin que eso haya sido controvertido—que al recurrido o a su causante se le confiriese el usufructo del solar mediante el Art. 70 de la Ley Municipal de 1928, cosa que argumenta aquél.

Para terminar, señalamos que el caso de *Municipio de Añasco* v. *Vélez*, 48 D.P.R. 636 (1935), citado por el recurrido, no resuelve que la existencia de la edificación da título de usufructuario. Allí lo que se resolvió fue en casos como aquél el desahucio en precario no era el remedio a que debía acudir el municipio.

Simpatizamos con el recurrido pero la ley y el derecho no están de su parte y así debemos declararlo. Hay un adagio en el *folklore* legal anglosajón que dice *"Hard cases make bad law."* Posiblemente aquí se trata de un *hard case* pero eso no nos autoriza a hacer mal derecho. De todas maneras, es posible que el recurrido pueda comprar mediante subasta el solar aquí concernido y en el cual enclava un edificio de su propiedad.

*Se revocará la sentencia recurrida.*