## HAMMOND v. CARTHAGE SULPHITE PULP & PAPER CO.

## UNITED STATES MORTGAGE & TRUST CO. v. SAME.

District Court, N. D. New York. November 3, 1928.

See, also, 34 F.(2d) 157.

Oliver D. Burden, U. S. Atty., of Syracuse, N. Y. (B. Fitch Tompkins, Asst. U. S. Atty., of Syracuse, N. Y., of counsel), for the United States.

Purcell, Cullen & Pitcher, of Watertown, N. Y. (Francis E. Cullen, of Watertown, N. Y., of counsel), for receiver of Carthage Sulphite Pulp & Paper Co.

Patterson, Eagle, Greenough & Day, of New York City (Carroll G. Walter, of New York City, of counsel), for United States Mortgage & Trust Co.

BRYANT, District Judge. This matter comes before the court upon a motion made by the receiver of the Carthage Company for an order dismissing the claim of the government for income taxes for the years 1917, 1918, 1920, 1922, and 1923. The court understands the facts to be briefly as follows:

On January 2, 1924, application was made to this court for the appointment of a receiver for the Carthage Sulphite Pulp & Paper Company, and an order to show cause why such receiver should not be appointed was granted. The matter came on for hearing, and the receiver was appointed January 14, 1924. At that time the Carthage Company appeared and did not consent to nor oppose the appointment. On January 3, 1924, Guy C. Jones, the secretary and treasurer of the Carthage Company signed two waivers extending the time in which the government might assess additional taxes and might collect them for one year. These waivers covered the years 1917 and 1918.

These waivers were received and accepted by the Commissioner of Internal Revenue on January 9, 1924. No waiver has been signed for the year 1920 or subsequent years. Mr. Jones was one of the officers who signed the original income tax returns and the waivers were signed by him without any special authorization by resolution of the board of directors. In other words, they were signed by him in the ordinary course of the performance of his duties as secretary and treasurer of the corporation. The government claims from the Carthage Company additional taxes, as follows:

| | |
|---|---|
| For the year 1917 | $61,518 68 |
| For the year 1918 | 10,419 75 |
| For the year 1920 | 24,022 26 |
| For the year 1922 | 190 80 |
| For the year 1923 | 570 00 |
| Total | $96,721 49 |

There is no dispute over the amounts of the additional assessments. It is conceded that the government, if entitled to assert the claims for the taxes, for any or all of the years, is entitled to the amounts above specified. After the determination of the amounts the government on December 23, 1924, filed with the receiver a claim for the unpaid taxes. The claim was a statement of the amount due for each of the years. The receiver objected to these claims filed by the government. On March 13, 1926, Judge Cooper issued an order providing: "That the United States of America be, and it is hereby, directed to file with the Receiver herein on or before the 15th day of April, 1926, a detailed statement of any and all claims which it has or claims to have against Carthage Sulphite Pulp & Paper Company and/or said Receiver; which statement shall set forth whether or not said United States contends that it is entitled to priority of payment over other creditors of said Carthage Company; and if said Receiver, or any other party in interest herein, shall desire to contest the justice or validity of any claim so filed by the United States or any right of priority asserted by the United States they shall serve their objections in writing upon Oliver D. Burden, United States Attorney, within ten days after the filing of such claim with the Receiver; and any party in interest thereupon shall be at liberty to bring said claim and objections on for hearing before this court upon ten days notice of the time and place of such hearing." The time for filing therein specified was subsequently extended from time to time, and the matter finally came on for hearing before the court July 16, 1927. The government, after the making of the order, filed a more detailed statement of its claim together with photostatic copies of papers on file. These are objected to as an insufficient compliance with the order.

If the facts as above briefly stated are not correct in all respects, then either party may move to have the matter reopened and evidence taken to establish the true state of facts.

The questions now before the court are:

(1) Validity of the waivers signed by the secretary-treasurer of the Carthage Company affecting the taxes for the years 1917 and 1918.

(2) The form of the claims filed by the government.

(3) The statute of limitations.

The claim of the government for income taxes for the year 1917 is disallowed. The waiver dated January 3, 1924, was signed after the expiration of the five-year period set forth in section 250(d) of the Revenue Act of 1921 (42 Stat. 265), and the court holds that the secretary-treasurer of a corporation has not the authority to revive a claim once barred by a limitation statute without express authority from the corporation. This is not an act within his apparent scope of authority and the government, under the circumstances, was chargeable with notice of the limitation of his powers.

The taxes for the other years are allowed as claims entitled to priority over claims other than the ones for administration expenses.

The secretary-treasurer, being the officer who originally signed the income tax returns and the officer whom the corporation held out to the government as the person entitled to represent it in such matters, by signing the waiver for 1918 before the claim for additional taxes was barred by section 250(d) of the Revenue Act of 1921, acted within the apparent scope of his authority, and the government had a right to rely and act upon such waiver. The contention of the receiver and the mortgage company that the waivers were invalid because signed at a time when the property of the Carthage Company was in custodia legis and at a time when his authority to act for the corporation had ended is not sustained. Even though the property of the corporation was in custodia legis, as claimed by the receiver and mortgage company, the acts of the officers of the corporation subsequent to the issuance of the order to show cause and prior to the appointment of a receiver are binding upon the corporation and receiver unless the acts performed were prejudicial to the then existing rights of its then existing creditors. In this case

the time for the government to assess and proceed to collect additional taxes for 1918 had not expired and the extension of the time by an officer of the corporation was not an act of such nature that the court should declare it invalid.

The court holds that the claims which were verified by the government and filed with the receiver December 23, 1924, constituted the commencement of proceedings for the collection of the taxes and that these proceedings were commenced within the time specified by statute. The Carthage Company being in the hands of a receiver, all that was required to institute a proceeding for the collection of an unpaid United States tax was the filing of a verified claim. The property of the company being in the hands of the court, the government could not collect by distraint. The order issued by Judge Cooper must be interpreted as a direction for an amplification of the claims already filed, and the filing of a detailed statement by the government in compliance thereof must be construed in this light rather than as the commencement of a proceeding. In view of the fact that the Carthage Company had gone over all those claims in detail with authorities at Washington, the papers filed by the government should be considered sufficient compliance with the order of March 16, 1926.

An order may be drawn disallowing the claim of the government for the taxes for the year 1917, and allowing the claims for taxes for the other years.