ASUNCIÓN NEGRONI WIDOW OF LLUBERAS ET AL., Plaintiffs and Appellants, *v.* SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 12632. Decided October 9, 1962.

*Celestino Morales, Jr.,* for appellants. *Francisco Espinosa, Acting Secretary of Justice, Arturo Estrella, Acting Solicitor General, Luis F. Candal, Assistant Secretary of Justice,* and *Carlos G. Látimer, Assistant Solicitor General,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Upon the death of Arturo Lluberas Rodríguez, his heirs Asunción Negroni—widow—and Otilia Lluberas Negroni—adopted daughter—continued to operate, together with the Lluberas–Pasarell brothers and sisters named Antonia, Manuel Francisco, Graciela, Celia, Rosa Elena, and Raquel, an agricultural enterprise—sugar-cane plantation—and industrial as well—sugar mill— which up to that time had operated under the name of "Arturo Lluberas y Sobrinos." Until 1948 income-tax returns were filed in the name of this joint venture—hereditary community for profit—[1] including the agricultural as well as the industrial operations. As of that date and upon the advice of the Public Service Commission, both activities were separated for tax purposes and returns were filed in the name of "Sucesión Lluberas" to cover the agricultural operations, and of "Arturo Lluberas y Sobrinos" for the mill operations.

The Secretary of the Treasury of Puerto Rico conducted an investigation of the income-tax returns of these entities

---

[1] On communities as joint ventures for income-tax purposes, see *Suárez* v. *Sec. of the Treas.,* 85 P.R.R. 372 (1962); *Calaf* v. *Sec. of the Treasury,* 76 P.R.R. 540 (1954); *Calaf* v. *Tax Court,* 73 P.R.R. 758 (1952); *Community of the Heirs of Fajardo* v. *Tax Court,* 73 P.R.R. 499 (1952); *Buscaglia, Treas.* v. *Tax Court,* 70 P.R.R. 93 (1949); *Vías* v. *Tax Court,* 67 P.R.R. 459 (1947); *Puig* v. *Tax Court,* 65 P.R.R. 691 (1946); and §§ 2(a)(3) and 411(a)(3) of the Income Tax Acts of 1924 and 1954, 13 L.P.R.A. §§ 632(a)(3) and 3411(a)(3).

and as a result thereof in April 1954 he determined deficiencies and allowed credits as indicated below:

| | Sucesión Lluberas | Arturo Lluberas y Sobrinos |
|------|------|------|
| 1946 | | ($1,686.10) |
| 1947 | | 8,727.13 |
| 1948 | | 45,343.54 |
| 1949 | $36,145.88 | 12,346.40 |
| 1950 | 27,982.33 | 295.60 |
| 1951 | 516.91 | 292.15 |
| 1952 | (327.97) | 179.47 |

No preliminary or final notice of these deficiencies was given as provided in § 57(a) of the Income Tax Act of 1924, 13 L.P.R.A. § 775(a), to the aforesaid entities nor to any of its members, in spite of which they were assessed on August 15, 1955 and the corresponding receipts were issued.[2] On the following March 16 the Collector of Internal Revenue of Yauco sent notices by registered mail to "Sucn. Arturo Lluberas Rodríguez" and to "Arturo Lluberas & Sobrinos," addressed to Albert Cage, husband of Otilia Lluberas Negroni, informing that inasmuch as the receipts issued for the deficiencies in question were pending they had proceeded to attach a certain rural property of 946.79 cuerdas situated in the ward of La Boca of Guayanilla. Indeed, on the 27th day of last February the Registrar of Property of Ponce had proceeded to enter two attachments on property No. 490 of the Municipal District of Guayanilla, setting forth in entry B that it was the property "of taxpayer Arturo Lluberas & Sobrinos, known as Sucn. de Arturo Lluberas Rodríguez, composed of Asunción Negroni Albelda and Otilia Lluberas Negroni, and the nephews and nieces of Arturo Lluberas Rodríguez named Manuel Francisco, Antonia, Rosa Elena,

---

[2] The 1951 deficiency of "Sucesión Lluberas" and the 1950, 1951 and 1952 deficiencies of "Arturo Lluberas y Sobrinos" were paid on April 7, 1954.

Graciela, Celia, and Raquel Lluberas Pasarell," and in entry C that there was attached "any interest or share which may correspond in this property to taxpayer Sucesión de Arturo Lluberas Rodríguez, known as Sucesión Lluberas, composed of Asunción Negroni Albelda and Otilia Lluberas Negroni."

A petition for injunction was filed against the Secretary of the Treasury praying the court to enter an order to the said defendant enjoining him from collecting the receipts issued, to proceed to cancel the attachments levied, and to abstain from performing any act seeking collection of the said receipts from plaintiffs.[3] Plaintiffs' cause of action may be summed up as follows: (a) the owners of the attached real property are not the taxpayers in whose name the oft-mentioned receipts were issued; (b) the lack of notice, preliminary or final, of the deficiencies to plaintiffs; and (c) assuming that it could be alleged that the attached property belongs to the taxpayers, no preliminary or final notice of the deficiencies was given to the two named entities.

In the course of the proceedings and in view of an impending tax sale of the attached real property, the trial court, on petition of plaintiffs, issued on November 8, 1957 an injunction pendente lite. Section 57(a)(10) of the Income Tax Act of 1924, 13 L.P.R.A. § 775 (a)(10).[4]

---

[3] There appeared as plaintiffs Asunción Negroni and her daughter Otilia Lluberas Cage; the Lluberas-Pasarell brothers and sisters named Antonia, Rosa Elena, Graciela, Celia, and Raquel; and the constituents of the succession of Manuel Francisco Lluberas Pasarell—who died subsequent to April 1954—composed of his children María Cristina, Rosa Antonia, and Gerónimo Lluberas Kells, and his grandchild Terry Muñoz Lluberas, on behalf of his predeceased mother Laura Elena Lluberas Kells, who died in 1943.

At the hearing Graciela Lluberas Pasarell, who had died in September 1957, was substituted as a party by her children Fernando, Graciela, and Antonio Valenti Lluberas.

[4] Counterpart of § 272(a)(10) of the Act of 1954, 13 L.P.R.A. § 3272 (a)(10); see Fuentes v. Sec. of the Treasury, 80 P.R.R. 198 (1958), and Fuentes v. Sec. of the Treasury, 85 P.R.R. 472 (1962).

■ The Secretary of the Treasury admits that the procedure of giving notice of the deficiencies was not followed, but maintains that it was not necessary because they had been accepted by Domingo Gilormini, in his capacity of administrator and in the name and behalf of those two entities, who subscribed to that effect separate consents for the assessment and collection of the tax deficiencies.[5] It was so held by the trial court and, consequently, the petition for injunction was dismissed. An appeal was taken on August 15, 1958, and even though the notice presented—which sets forth the grounds adduced—does not raise a substantial constitutional question, *Soltero* v. *Sec. of the Treasury*, *ante*, p. 25,[6] we will consider the appeal as a petition for review. Section 14(*f*) of the Judiciary Act, as amended by Act No. 115 of June 26, 1958, 4 L.P.R.A. (1961 Supp.), p. 211.

■■ 1. Pursuant to the provisions of § 57(*a*) (1) of the Income Tax Act of 1924, 13 L.P.R.A. § 775(*a*) (1), the Secretary of the Treasury is precluded from assessing a defi-

---

[5] The documents signed were forms 482 used by the Treasury Department. This form reads as follows:

"Waiver is hereby made of the restrictions imposed by § 57 of the Income Tax Act and consent is given to the assessment and collection of the following tax deficiency:

Taxable year ending in 1950:

| | |
|---|---:|
| Tax | $27,982.33 |
| Plus: Interest at 6 per cent annually on the deficiency as of the date prescribed for the payment of the first instalment up to the date payment is tendered | ——————— |
| Penalties: | |
| 5 per cent on the deficiency owing to negligence or intentional disregard of the rules and regulations, but without intention to commit fraud | ——————— |
| 5 per cent on the tax for each month or fraction thereof of delay in filing | ——————— |
| Total tax, interest, and penalties | $——————— |

(Sgd.) ———————————
 Taxpayer

 ———————————
 Address

Date ———————————."

[6] Bar Association, 1962 series, No. 3.

ciency or proceeding to its collection by distraint or court proceeding until notice of deficiency has been sent to the taxpayer. However, in certain instances compliance with such previous notice may be dispensed with, *Ramos v. Sec. of the Treasury*, 85 P.R.R. 407 (1962), particularly footnote 1, one of them being the written waiver by the taxpayer of the restrictions on assessment and collection of deficiencies, according to the provisions of the existing § 272 (*d*) of the Act of 1954, 13 L.P.R.A. § 3272 (*d*). However, a similar provision was not incorporated in the Act of 1924 until the enactment of Act No. 9 of October 8, 1954 (Sp. Sess. Laws, p. 122), whereby there was added, among others, subd. (*f*) on "waiver of restrictions" in § 57, 13 L.P.R.A. § 775 (*f*).[7]

 Since Act No. 9 took effect on the same date of its enactment, it is argued that the waiver documents relied on by the Secretary, which were signed on the 7th day of last April, are not valid. This would amount to holding that prior to the addition of subd. (*f*) a taxpayer could not waive the restrictions on assessment and collection of deficiencies because there was no statutory provision so authorizing. However, after a brief examination of the problem we will agree that such solution is neither adequate nor logical. The purpose of the preliminary and of the final notice of deficiencies required by § 57 (*a*) (1) is none other than to give the taxpayer an opportunity to argue his tax liability, either administratively, if he elects to be heard before the Bureau, or judicially, if he prefers to go to court to review the administrative determination. In any event, he is not bound to pay the deficiency, and the greater additional requisite established in the judicial stage is that of bonding. However, when the taxpayer consents to the determination and waives the notice, it is merely because he is willing to pay the deficiency determined. He receives the benefits of

---

[7] The Federal Act incorporated for the first time a similar provision in the Internal Revenue Act of 1926, § 274 (*d*), 44 Stat. 56.

not paying interest "to the thirtieth day after the filing of such waiver or to the date the deficiency is assessed, whichever is the earlier," § 57(d) of the Act of 1924, 13 L.P.R.A. § 775(d); § 292 of the Act of 1954, 13 L.P.R.A. § 3292, and he is also permitted to pay the tax thereby avoiding the accumulation of interest, without, on the other hand, losing the opportunity to assail the same in court through the corresponding action for refund. In the final analysis, § 57(a)(1) guaranteed to the taxpayer the right to the nonassessment of the tax before resorting to court or to the expiration of the period therefor granted by law.[8] Even in the absence of a statute expressly authorizing such action, any waiver of this right was perfectly admissible as not being contrary to law, to public interest or public order, or prejudicial to the interest of a third person, § 4 of the Civil Code, 1930 ed., 31 L.P.R.A. § 4; cf. *Bertelsen & Petersen Engineering Co.* v. *United States*, 60 F.2d 745 (C.C.A. 1, 1932); *Warner Sugar Refining Co.*, 4 B.T.A. 5 (1926). See 10 MERTENS, Law of Federal Income Taxation 84, § 57.44 (1958).

2. There is also challenged the power of Domingo Gilormini to bind the two entities "Sucesión Lluberas" and "Arturo Lluberas y Sobrinos" by affixing his signature to the consent forms for the assessment and collection of deficiencies.[9] It is well to glance at the evidence introduced on this aspect of the litigation.

Domingo Gilormini was the administrator of the business of both ventures, an office which he held since some time prior

---

[8] In *United States* v. *Price*, 361 U.S. 304 (1960), it was held that the waiver may be validly made before notice of the deficiency is given, thereby resolving the conflict between the Sixth Circuit (*Moore* v. *Cleveland Ry. Co.*, 108 F.2d 656 (C.C.A. 6, 1940)), and the Ninth Circuit (*Mutual Lumber Co.* v. *Poe*, 66 F.2d 904 (C.C.A. 9, 1933)).

[9] The importance of this issue lies in the fact that, if it succeeds, the Secretary would be prevented from notifying at this time the deficiencies determined by reason of the lapse of the seven years provided by § 60(a)(1) of the Act of 1924, 13 L.P.R.A. § 778(a)(1).

to Arturo Lluberas' death. As part of his administrative duties he signed and filed the income-tax returns of "Arturo Lluberas y Sobrinos" from 1943 to 1948, and from 1949 to 1953 the returns of "Sucesión Lluberas" and "Arturo Lluberas y Sobrinos." In almost all the returns filed it was set forth that he was in charge of the "partnership" books. On January 13, 1945 he wrote to the Secretary of the Treasury requesting authorization, in the name of "Arturo Lluberas & Sobrinos," to change the taxable year ending on June 30 to the calendar year, "because the grinding seasons are liquidated with delay"; on March 7, 1955 he requested an extension to file the income-tax returns of both ventures. During all this time he was also administrator of the community Hermanos Lluberas Pasarell and of almost all its members, signing and filing in the latter's name the corresponding income-tax returns.

Together with Mr. Cage he took part in the discussions during the investigations conducted by the income-tax inspector. The investigation having been terminated, he was advised of the result of the adjustments made by the representative of the Secretary of the Treasury and of the resulting deficiencies. He procured and succeeded in avoiding the imposition of the penalties for intentional negligence. On April 7, 1954 he subscribed documents of waiver of the restrictions for the assessment and collection of deficiencies. Although it was not set forth below his signature that he appeared on behalf of the ventures, in each form Mr. Cage filled in the blanks corresponding to the identification of the taxable year and the amount of the deficiency, which agree exactly with the amounts set forth at the outset of this opinion. Furthermore, coetaneously with the signing of the waivers, he accepted the deficiencies determined to "Sucesión Lluberas" for 1951 and to "Arturo Lluberas y Sobrinos" for 1950, 1951, and 1952, issuing and signing in that act, in

the name and on the bank account of the ventures, the corresponding checks for the payment thereof.

It should also be noted that by public deeds of execution or protocolization of power of attorney notarized between October 1953 and March 1954, he acted as agent for Asunción Negroni widow of Lluberas, Otilia Lluberas Negroni, Raquel Lluberas Pasarell, Manuel Francisco Lluberas Pasarell, and Graciela Lluberas Pasarell. After stating that they were co-owners of the sugar mill which operates under the name of "Central San Francisco" and also under the name of "Arturo Lluberas y Sobrinos," all the constituents authorized Mr. Gilormini "to represent the said Central before all Departments, Agencies, Authorities, and Officials of the Federal Government and its Courts, and of the Government of the Commonwealth of Puerto Rico and its Courts . . . . to fill out, swear, submit, and file reports, returns, and other necessary documents before the competent authorities and before the pertinent associations, corporations, or persons."

■ 10 MERTENS, *op. cit.*, § 57.60, points out that a liberal interpretation of the general principle of agency has been made in respect to tax waivers. That tendency has been followed uniformly in the few decisions on the matter. In *United States* v. *Krueger*, 121 F.2d 842 (C.C.A. 3, 1941), there was challenged a waiver signed on behalf of a closed corporation by one of the directors who served as a dissolution trustee. In dismissing the challenge, the court said that the power to waive the limitations for the assessment and collection of deficiencies is included in the power of corporations to settle their affairs and divide the remaining assets among the stockholders; that a trustee has implied power to do everything reasonably necessary to reduce the corporate tax liability; and, lastly, it considered as index of the power to sign the waiver on behalf of the corporation the fact that the director had signed the income-tax return in the latter's name, had represented it at meetings for the

purpose of discussing the deficiencies, and had signed the check for the payment thereof. See, also, *Liberty Baking Co.* v. *Heiner*, 37 F.2d 703 (C.C.A. 3, 1930) ; *Philip Carey Mfg. Co.* v. *Dean*, 58 F.2d 737 (C.C.A. 6, 1932) (intervention in discussion for adjustment of deficiencies) ; *Hammond* v. *Carthage Sulphite Pulp & Paper Co.*, 34 F.2d 155 (N.D. N.Y. 1928) (signing of income-tax returns and intervention in the discussion of deficiencies). And in *Independent I. & C. Storage Co.* v. *Commissioner of Int. Rev.*, 50 F.2d 31 (C.C.A. 5, 1931), it is said that it is certainly not reasonable to contend that a person had authority to sign on behalf of a corporation an income-tax return sufficient to avoid the penalties for failure to file, and yet deny power to that same person to sign a waiver with regard to the tax to be imposed as a result of the investigation of the return. *Cf. Jaffee* v. *Commissioner of Internal Revenue*, 45 F.2d 679 (C.C.A. 2, 1930) ; *Piedmont Wagon & Mfg. Co.* v. *United States*, 6 F. Supp. 125, 129 (Ct. Cl. 1934), and *Central Aguirre Sugar Co.* v. *United States*, 2 F. Supp. 538, 544 (Ct. Cl. 1933).

We agree with the trial court that the entire picture of the facts indicates without doubt that Mr. Gilormini had authority to sign the waivers of restrictions for the assessment and collection of the deficiencies of both ventures, and, therefore, that the notice thereof required by § 57(*a*)(1) was unnecessary. It appears that Mr. Gilormini was a full-fledged administrator with authority to represent the ventures in matters relating to the filing of income-tax returns, payment of taxes, and adjustment of the tax liability; that as such he not only signed and swore the returns, but also intervened in the discussions with the Secretary's representative in the course of the investigation, accepted part of the deficiencies determined, and paid them.

Since a joint venture is *for tax purposes* an entity separate and apart from its constituents, *Calaf* v. *Sec. of the Treasury*, 76 P.R.R. 540, 544 (1954), it was not nec-

essary to notify its constituents individually. The waiver on behalf of the ventures was all that was necessary to enable the Secretary to assess the deficiencies. This in no way means that as respects the *payment* of the deficiencies assessed the constituents of these entities may find refuge in the fact that the properties are not recorded in the name of the latter, but that they belong to them individually. After all, the Secretary has relied on the statements made by the taxpayers themselves, according to which their constituents are the persons in whose names the attached property is recorded.

The other issues raised by appellants do not merit serious consideration and depend on the preceding holding.

The judgment rendered by the Superior Court, San Juan Part, on July 11, 1958, will be affirmed.