CRISTÓBAL PUIG y GABRIEL ABRAHAM, peticionarios, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado.

Núm. 61.—*Sometido:* Noviembre 13, 1945. *Resuelto:* Febrero 21, 1946.

*Damián Monserrat, Jr., G. de la Haba* y *Rafael Baragaño, Jr.,* abogados de los peticionarios; *Hon. Procurador General E. Campos del Toro, A. D. Marchand Paz* y *Elmer Toro Lucchetti,* abogados éstos de la División de Contribuciones y Litigios Especiales del Depar-

tamento de Justicia, abogados todos del Interventor, Tesorero de Puerto Rico, querellado en el pleito principal.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Cristóbal Puig y Gabriel Abraham adquirieron por compra, en común proindiviso, la casa número 48 de la calle Salvador Brau y la número 43–45 de la calle San Justo de esta ciudad. Posteriormente se constituyó una sociedad entre Cristóbal Puig, Gabriel Abraham y José Gayá y los dos primeros arrendaron las dos casas a la sociedad. Para el año 1940 Cristóbal Puig y Gabriel Abraham rindieron respectivamente su planilla individual de ingresos, en las cuales incluyeron los que habían obtenido durante ese año por concepto de sus respectivos condominios en las casas arrendadas a la sociedad. Entendió el Tesorero de Puerto Rico que la relación existente entre ellos, en lo que a las casas respecta, no era la de meros comuneros, sino la de personas dedicadas a una empresa común con fines de lucro (*joint adventurers*) y que por consiguiente debían pagar la contribución de 17 por ciento fijada por la sección 28 de la Ley de Contribuciones Sobre Ingresos, según fué enmendada por la Ley núm. 31 de 12 de abril de 1941 ((1) pág. 479). En su consecuencia, les notificó una deficiencia ascendente a $1,219.27, más la cantidad de $116.64 de intereses y la de $304.82 por concepto de penalidades.

El 23 de marzo de 1943 los peticionarios solicitaron del Tesorero que reconsiderase la deficiencia notificada y siéndole denegada el 31 de marzo de ese mismo año, recurrieron para ante el Tribunal de Contribuciones de Puerto Rico el 22 de abril de 1943, previa prestación de la correspondiente fianza.

El 13 de abril de 1945 el Tribunal dictó resolución declarando sin lugar la querella formulada por los peticionarios, notificándoseles esa resolución el 18 de abril de 1945 y el 8

de junio último los peticionarios instaron el presente recurso en este Tribunal.

La primera cuestión a resolver es la que promueve el Tesorero al efecto de que esta corte carece de jurisdicción para conocer de este caso por haberse radicado el *certiorari* después de vencido el término fijado por la ley. Su contención está predicada en que cuando, como en el presente caso, el Tribunal de Contribuciones deniega la querella, no es necesario que el Tesorero radique un nuevo cómputo; que por consiguiente la decisión de dicho Tribunal es final desde que se notifica a las partes la desestimación de la querella y que desde la notificación de esa decisión hasta que se radicó el recurso en este Tribunal, transcurrió con exceso el término de treinta días que para revisar la resolución del Tribunal de Contribuciones fija la ley.

El argumento del Tesorero descansa sobre una premisa falsa. Aun en los casos en que el Tribunal de Contribuciones desestima la querella, el cómputo es necesario, pues desde la fecha en que el Tesorero notifica la imposición de la contribución o la deficiencia, según fuere el caso, hasta que el Tribunal de Contribuciones desestima la querella, la cantidad que originalmente notificó el Tesorero al contribuyente para ser por éste pagada, continúa devengando intereses, y por lo tanto, la cantidad que finalmente adeude el contribuyente a la fecha en que el Tribunal de Contribuciones desestima la querella, necesariamente es mayor que la que originalmente notificó el Tesorero. Siendo ello así, se hace necesario el cómputo para que el contribuyente sepa con certeza la cantidad exacta que debe pagar al Tesorero bajo protesta para poder recurrir ante este Tribunal. La necesidad del cómputo lo demuestra el presente caso donde la deficiencia original notificada el 10 de marzo de 1943 montaba a $1,640.73 intereses inclusive, mientras que el cómputo notificado el 3 de mayo de 1945, luego de denegada la querella

por el Tribunal de Contribuciones, montó a $1,524.09 de principal más $280.43 de intereses que totalizan $1,804.52.

Establecida la necesidad de la radicación del cómputo, veamos lo que prescribe la Núm. 29 de las Reglas de Procedimiento del Tribunal de Contribuciones vigentes desde el 15 de agosto de 1943. De conformidad con dicha Regla, la resolución del Tribunal de Contribuciones no es final hasta que vencidos los diez días siguientes a la radicación del cómputo por el Tesorero sin que se hubiere radicado oposición por el contribuyente, o cuando tal oposición hubiere sido radicada y resuelta por el Tribunal, el secretario notifique a las partes la finalidad de la resolución.

En el presente caso la resolución del Tribunal de Contribuciones denegando la querella fué dictada el 13 de abril de 1945, y el 3 de mayo siguiente el Tesorero radicó el cómputo. Los apelantes no radicaron objeción alguna al mismo, y no fué hasta el 24 de mayo que el secretario les notifico la finalidad de la resolución. Habiendo los apelantes radicado este recurso el 8 de junio, es decir, quince días después de habérseles notificado la finalidad de la resolución, es evidente que el recurso fué radicado dentro del término de treinta días que les concede la ley.

Resuelta la cuestión jurisdiccional pasaremos a discutir la única cuestión suscitada por los apelantes, la de si la relación existente entre ellos en lo que a las dos casas respecta, es la de meros comuneros, o si como sostuvo el Tribunal de Contribuciones, es la de personas dedicadas a una empresa común (*joint venture*) con fines de lucro.

La ley no contiene una definición de lo que es la "empresa común con fines de lucro" que de conformidad con la sección 2(a) (3) de la Ley de Contribuciones Sobre Ingresos, se entiende incluída en el término "sociedad".[1]

---

[1] La sección 2(a)(3) dice así:

"El término 'sociedad' incluirá las sociedades civiles, mercantiles, industriales, agrícolas, profesionales o de cualquiera otra índole, conste o no, su

Está bien establecido que la mera comunidad de bienes no constituye una empresa común 'para fines de lucro. *Chisholm* v. *Gilmer,* 81 F. 2d 120 (C.C.A. 4th, 1936) y *Bowmaster* v. *Carrol,* 23 F.2d 825 (C.C.A. 8th, 1928). Para que la constituya es preciso que sin formarse una verdadera sociedad,([2]) los dueños de los condominios los aporten para dedicarse, con fines de lucro, a una determinada operación; que participen todos en las pérdidas y ganancias; que haya entre ellos la relación fiduciaria que existe entre los socios, de suerte que cada uno sea mandatario de los demás en lo que respecta a cualquier gestión comprendida dentro del ámbito de la empresa común, teniendo así cada uno voz y voto en su administración, si bien pueden convenir que uno o más de ellos asuman la gestión del negocio en representación de los demás, tal y como sucede con las sociedades. *Porter* v. *Cooke,* 127 F.2d 853 (C.C.A. 5th, 1942); *Beck* v. *Cagle,* 115 P.2d 613 (Cal. 1941); *Detachable Bit Co.* v. *Timken Roller Bearing Co.,* 133 F.2d 632 (C.C.A. 6th, 1943); *Howard* v. *Societa Di Unione E Beneficenza Italiana,* 145 P.2d 694 (Cal. 1944); 35 Mich L. Rev. 297 y 58 U. of Pa. L. Rev. 309.

En consonancia con los principios expuestos, se ha resuelto en Nueva York que la "empresa común con fines de lucro" es una sociedad limitada que se rige por los principios aplicables al contrato de sociedad. *George W. Haxton & Son* v. *Rich,* 47 N.Y.S.2d 501 (1944) y *Ross* v. *Willett,* 76 Hun. 211 (N.Y. 1894). Y en Luisiana, donde impera el Derecho Civil, se ha resuelto que la "empresa común" existe cuando dos o más personas convienen entre sí poner en común bienes o trabajo para dedicarse a un negocio determinado con el fin de obtener lucro común, creando así el *status* de una sociedad, aunque los hechos no demuestren la constitución de una so-

---

constitución en escritura pública, o documento privado e incluirá, además, cuando dos o más personas bajo un nombre común o 'no se dediquen a una empresa común (*joint ventures*), con fines de lucro.''

([2]) Para un estudio comparativo del contrato de sociedad y la comunidad de bienes, véase *Carle Dubois* v. *Benítez,* 46 D.P.R. 188.

ciedad con todas las formalidades legales. Se ha resuelto allí, además, que si bien la "empresa común" no es idéntica a la sociedad, es análoga a ella y se rige en gran parte por los principios aplicables a las sociedades. *McCann* v. *Todd,* 14 So.2d 469 (La. 1493) y *Young* v. *Reed,* 192 So. 780 (La. 1939).

Examinemos, pues, los hechos del caso que nos ocupa para determinar si la relación entre Cristóbal Puig y Gabriel Abraham, en lo que a las dos casas concierne es, como sostuvo el Tribunal de Contribuciones, la de personas dedicadas a una "empresa común con fines de lucro."

Aparece de la prueba que al constituirse la sociedad Puig, Abraham & Co., S. en C., los dos comuneros le arrendaron sus respectivos condominios, sin que resulte de dicha prueba que, en lo que a las dos casas respecta, el uno tuviese voz e ingerencia en la administración del condominio del otro. Por el contrario la evidencia demuestra que actuaban independientemente y que la gestión de cada uno de ellos se reducía a percibir el aprovechamiento de su propiedad, o sea el canon de arrendàmiento de sus respectivos condominios sin realizar ninguna otra actividad en relación con los mismos. El efecto legal de haber ellos arrendado sus respectivos condominios a una sociedad de que ambos eran miembros, es el mismo que si los hubieran arrendado a cualquier otra persona extraña, pues no surge de la prueba que ellos aportaran sus condominios a esa sociedad.

No existiendo entre los apelantes las circunstancias que deben concurrir para que surja la "empresa común con fines de lucro", la comunidad de bienes existente entre los apelantes no está incluída en la sección 2 (a)(3) antes citada y consecuentemente no está sujeta a la contribución de 17 por ciento impuesta por la sección 28 de la Ley de Contribuciones Sobre Ingresos, según fué enmendada por la núm. 31 de 12 de abril de 1941.

*Procede, por lo expuesto, anular la resolución recurrida y devolver el caso al Tribunal de Contribuciones para que dicte otra de conformidad con los principios enunciados en esta opinión.*