José, Manuel y Amalia Vías Torrijos, componentes de la Sucesión de Juan F. Vías, peticionarios, *v.* Tribunal de Contribuciones de Puerto Rico, demandado. Rafael Buscaglia, Tesorero de Puerto Rico, peticionario, *v.* Tribunal de Contribuciones de Puerto Rico, demandado.

Núms. 113, 114.—*Sometidos:* Junio 3, 1947. *Resueltos:* Junio 23, 1947.

*J. J. Ortiz Alibrán,* abogado de los componentes de la sucesión de Juan F. Vías; *Hon. Procurador General Luis Negrón Fernández* y *Edgar S. Belaval,* abogado especial éste del Departamento de Justicia, abogados ambos del Tesorero de Puerto Rico.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

El Tesorero de Puerto Rico notificó unas deficiencias a José, Manuel y Amalia Vías Torrijos, componentes de la Sucesión Juan F. Vías, en relación con las contribuciones sobre ingresos correspondientes a los años 1938 al 1942, alegando que dichas personas, de acuerdo con la sección 2(*a*)(3) de la Ley núm. 74 del 6 de agosto de 1925 (pág. 401), según enmendada, constituyen una sociedad o empresa común con fines de lucro. Denegada la reconsideración solicitada recurren los contribuyentes ante el Tribunal de Contribuciones. Después de celebrada la vista correspondiente dicho tribunal resolvió que el pago de las deficiencias correspondientes a los años 1938, 1939 y 1940 no procedía pero sí parcialmente las de los años 1941 y 1942. Expedimos los autos de *certiorari* en estos dos casos, a petición de los contribuyentes y del Tesorero, para revisar la resolución recaída. Resolveremos los dos casos conjuntamente.

Los peticionarios, en el caso número 113, heredaron de su padre en el año 1938, una finca rústica, una casa sita en la calle Cruz número 21 y un condominio consistente de la mitad de la casa que lleva el número 42 en la calle Salvador Brau, ambas de San Juan. El Tribunal de Contribuciones en su opinión hizo constar que consideraba probado que: "...no satisfechos con las condiciones ruinosas en que se encontraba la casa ubicada en la calle Cruz 21, así como tampoco con las rentas que de ella percibían, procedieron a derrumbar el edi-

ficio de dos pisos que allí existía a la fecha de la muerte de su padre y a la fecha de la partición de bienes, y a edificar, en su lugar, un edificio nuevo y de cuatro pisos. Para ello tomaron la suma de $24,000 de su madre a cambio de una pensión vitalicia, y además las cantidades de $15,000, $13,000 y $750 del Banco Popular de Puerto Rico. Consiguieron un ingeniero-contratista para que les hiciera un plano de la obra y les diera las especificaciones de la misma. El contrato original que firmaron en relación con ese trabajo fué por la suma de $37,000 y por trabajos adicionales por el monto de $11,900. Tienen un apoderado para que a nombre y en representación de todos ellos alquile los locales que hay en dicho edificio, contrate y pague las reparaciones y otros gastos relacionados con el mismo, y envíe mensualmente a cada uno de los apelantes la participación que de una tercera parte le pertenece del producido neto de las rentas de dicho edificio.

"A ellos les fué también adjudicado, en la partición que de los bienes de su padre se hiciera en 11 de mayo de 1938, en común y pro indiviso, un condominio de una mitad en el edificio y solar de la calle Salvador Brau 42, en San Juan. Posteriormente, y sin que se nos dijera en qué fecha, los apelantes compraron el otro condominio de una mitad que en dicho edificio tenía su tío. Esa compra la efectuaron con dinero de su propio peculio, con el propósito de evitar posibles dificultades que pudieran surgir con tres hijos legítimos y una ahijada que tenía el mencionado tío. Después de dicha compra, continuaron dividiéndose el producido neto de las rentas totales del edificio en la misma proporción anterior de una tercera parte para cada uno."

El artículo 2(a)(3) de la Ley de Contribuciones sobre Ingresos, según rigió hasta el 31 de diciembre de 1939, disponía que:

"El término 'sociedad' incluirá las sociedades civiles, mercantiles, industriales, agrícolas, profesionales o de cualquiera otra índole y las asociaciones de todas clases."

Fué enmendado por la Ley núm. 31 de 12 de abril de 1941 (pág. 479), en vigor desde el primero de enero de 1940, para leer así:

"El término 'sociedad' incluirá las sociedades civiles, mercantiles, industriales, agrícolas, profesionales o de cualquiera otra índole, conste o no su constitución en escritura pública o documento privado e incluirá, además, cuando dos o más personas bajo un nombre común o no se dediquen a una empresa común (*joint ventures*), con fines de lucro.

¿Surge de los hechos expuestos por el tribunal inferior la existencia de una empresa común que obligue a los peticionarios a pagar la contribución sobre ingresos que a esas entidades le impone la ley? El Tribunal de Contribuciones falló en contra de los recurrentes en lo que concierne a las dos casas sitas en San Juan, las cuales entendió las poseían en una empresa común con fines de lucro para los años 1941 y 1942. En cuanto a los años anteriores resolvió que no existía tal empresa común de acuerdo con los términos de la ley antes de ser enmendada en el año 1941.

El criterio para determinar la existencia de una empresa común quedó establecido en *Puig* v. *Tribunal de Contribuciones*, 65 D.P.R. 734, donde se dijo, a la pág. 739:

"Está bien establecido que la mera comunidad de bienes no constituye una empresa común para fines de lucro. *Chisholm* v. *Gilmer*, 81 F.2d 120 (C.C.A. 4th, 1936) y *Bowmaster* v. *Carrol*, 23 F.2d 825 (C.C.A. 8th, 1928). Para que la constituya es preciso que sin formarse una verdadera sociedad, los dueños de los condominios los aporten para dedicarse, con fines de lucro, a una determinada operación; que participen todos en las pérdidas y ganancias; que haya entre ellos la relación fiduciaria que existe entre los socios, de suerte que cada uno sea mandatario de los demás en lo que respecta a cualquier gestión comprendida dentro del ámbito de la empresa común, teniendo así cada uno voz y voto en su administración, si bien pueden convenir que uno o más de ellos asuman la gestión del negocio en representación de los demás, tal y como sucede con las sociedades (Citas.)"

■ El presente caso, en lo que a la casa de la calle Cruz 21 respecta, es similar al de *Buscaglia* v. *Tribunal de Contribuciones,* certiorari 73, resuelto por opinión *Per Curiam* el 12 de abril de 1946, donde se dijo que "esos hechos sólo demuestran que los contribuyentes heredaron un solar en el que estaban enclavadas unas casas en ruinas, las cuales destruyeron, y en su lugar construyeron un nueva edificación, la cual poseen en comunidad. Estos hechos,(1) sin más, no establecen una empresa común con fines de lucro. . ."

El Tribunal de Contribuciones distingue el caso de *Buscaglia* v. *Tribunal de Contribuciones,* supra, del de autos por el hecho de que en aquél el edificio fué construído con fondos de la sucesión, y en el de autos con fondos del propio peculio de los miembros de la sucesión. Al hacer esta distinción dicho tribunal no cita autoridad alguna. A nuestro juicio la procedencia de los fondos no es determinativa de si la relación existente entre los individuos es una de mera comunidad de bienes o de empresa común, como tampoco lo sería para determinar si es la de una sociedad. La norma es la que establece el caso de *Puig* v. *Tribunal,* supra, al efecto de que exista entre los participantes la relación fiduciaria que existe entre los socios de suerte que cada uno sea mandatario de los demás en lo que respecta a cualquier gestión comprendida dentro del ámbito de la empresa común, teniendo así cada uno voz y voto en su administración, si bien pueden convenir que uno o más de ellos asuman la gestión del negocio en representación de los demás, tal y como sucede con las sociedades. Es más, los hechos en el caso de *Puig* demuestran que Cristóbal Puig y Gabriel Abraham adquirieron por compra, en común pro indiviso, dos casas en San Juan y luego las arrendaron a una sociedad pero que "la gestión de cada uno de ellos se reducía a percibir el aprovechamiento de su propiedad, o sea el canon de arrendamiento de sus respectivos con-

---

(1)La nueva edificación, según se admite en los alegatos, es una casa de apartamientos, de los cuales los comuneros perciben rentas.

dominios . . .'' Es de presumirse que al comprar dichas casas, Puig y Abraham, lo hicieron con su propio peculio, pero ese hecho, en sí, no fué determinativo de que al arrendar sus condominios y percibir sus rentas ellos establecieran una empresa común con fines de lucro.

En lo que respecta al condominio que los peticionarios compraron a su tío, en la casa sita en Salvador Brau 42, la evidencia tampoco revela la existencia de una empresa común, ya que ellos se limitaron a consolidar el dominio total del inmueble de suerte que, en vez de poseer la mitad vinieron a ser dueños de la totalidad del mismo, y no se ha demostrado que esta operación alteró en lo más mínimo las relaciones existentes entre ellos.

Siendo errónea la conclusión a que llegó el Tribunal de Contribuciones en cuanto a la existencia de una empresa común con fines de lucro entre los peticionarios para los años 1941 y 1942, en el caso número 113 *procede la revocación de la resolución recurrida. En el caso número 114 procede su confirmación ya que dicho tribunal resolvió que para los años 1938, 1939 y 1940 no existía tal empresa común de acuerdo con las leyes vigentes para dichos años.*

El Juez Asociado Sr. Marrero está conforme con el resultado.