ASUNCIÓN NEGRONI VDA. DE LLUBERAS ET AL., demandantes y recurrentes, *v.* SECRETARIO DE HACIENDA, demandado y recurrido.

*Número:* 12632      *Resuelto:* 9 de octubre de 1962

*Celestino Morales, Jr.,* abogado de los recurrentes; *Francisco Espinosa, Secretario de Justicia Interino, Arturo Estrella Procurador General Interino, Luis F. Candal, Procurador Auxiliar y Carlos G. Látimer, Procurador General Auxiliar,* abogados del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

Al fallecimiento de don Arturo Lluberas Rodríguez, sus herederos doña Asunción Negroni—cónyuge viuda—y doña Otilia Lluberas Negroni—hija adoptiva—continuaron en unión a los hermanos Lluberas Pasarell, nombrados Antonia, Manuel Francisco, Graciela, Celia, Rosa Elena y Raquel, en la explotación de una empresa agrícola—plantación de cañas —e industrial—factoría azucarera—que hasta entonces giraba bajo la razón de "Arturo Lluberas y Sobrinos". Hasta el año 1948 se rindieron declaraciones de ingresos a nombre de esta empresa común—comunidad hereditaria con fines de lucro [1]—incluyéndose tanto las operaciones agrícolas como las industriales. A partir de la fecha indicada, y por sugestión de la Comisión de Servicio Público, se separaron ambas actividades para fines contributivos, y se presentaron declaraciones a nombre de "Sucesión Lluberas," para cubrir las operaciones agrícolas, y de "Arturo Lluberas y Sobrinos" para las operaciones de factoría.

El Secretario de Hacienda de Puerto Rico practicó una investigación de las declaraciones de ingresos de estas entidades, y como resultado de la misma, en abril de 1954 determinó deficiencias y concedió créditos según se indica a continuación:

---

[1] Sobre las comunidades como empresas comunes para los fines de contribución sobre ingresos, véanse, *Suárez Fuentes v. Srio. de Hacienda,* 85 D.P.R. 388 (1962); *Calaf v. Secretario de Hacienda,* 76 D.P.R. 577 (1954); *Calaf v. Tribunal de Contribuciones,* 73 D.P.R. 812 (1952); *Comunidad Fajardo v. Tribunal de Contribuciones,* 73 D.P.R. 543 (1952); *Tesorero v. Tribunal de Contribuciones,* 70 D.P.R. 99 (1949); *Vías v. Tribunal de Contribuciones,* 67 D.P.R. 491 (1947); *Puig v. Tribunal de Contribuciones,* 65 D.P.R. 734 (1946); y las secciones 2(a)(3) y 411(a)(3) de las Leyes de Contribución sobre Ingresos de 1924 y 1954, 13 L.P.R.A. secs. 632(a)(3) y 3411(a)(3).

| | Sucesión Lluberas | Arturo Lluberas y Sobrinos |
|---|---|---|
| 1946 | | (1, 686. 10) |
| 1947 | | 8, 727. 13 |
| 1948 | | 45, 343. 54 |
| 1949 | $36, 145. 88 | 12, 346. 40 |
| 1950 | 27, 982. 33 | 295. 60 |
| 1951 | 516. 91 | 292. 15 |
| 1952 | (327. 97) | 179. 47 |

Estas deficiencias no fueron notificadas preliminarmente o en forma final según dispuesto en la sección 57 (a) de la Ley de Contribuciones sobre Ingresos de 1924, 13 L.P.R.A. sec. 775 (a), a las entidades contributivas mencionadas ni a ninguno de los miembros que las integraban, a pesar de lo cual fueron tasadas en 15 de agosto de 1955, expidiéndose los recibos correspondientes. (²) En 16 de marzo siguiente el Colector de Rentas Internas de Yauco envió notificaciones a "Sucn. Arturo Lluberas Rodríguez" y a "Arturo Lluberas & Sobrinos," remitiéndolas por correo certificado al señor Albert Cage, esposo de doña Otilia Lluberas Negroni, en las cuales informaba que encontrándose pendientes de pago los recibos expedidos con motivo de las deficiencias relacionadas, se había procedido a embargar una finca rústica de 946.79 cuerdas, sita en el barrio La Boca, de Guayanilla. Efectivamente, en 27 de febrero anterior, el Registrador de la Propiedad de Ponce había procedido a anotar dos embargos sobre la finca número 490 del término de Guayanilla, haciéndose constar en la anotación letra B que la misma era propiedad "del contribuyente Arturo Lluberas & Sobrinos, conocida por la Sucn. de Arturo Lluberas Rodríguez, integrada por Asunción Negroni Abelda y Otilia Lluberas Negroni, y los sobrinos de Arturo Lluberas Rodríguez, nombrados Manuel Francisco, Antonia, Rosa Elena, Graciela,

---

(²) La deficiencia del año 1951 de "Sucesión Lluberas" y las de los años 1950, 1951 y 1952 de "Arturo Lluberas y Sobrinos" fueron satisfechas en 7 de abril de 1954.

Cecilia y Raquel Lluberas Pasarell," y en la anotación C, que se embargaba "todo condominio o participación que en esta finca corresponda al contribuyente Sucesión de Arturo Lluberas Rodríguez, conocida por Sucesión Lluberas, compuesta por Asunción Negroni Albelda y Otilia Lluberas Negroni."

Se inició un recurso de injunction contra el Secretario de Hacienda, solicitándose del tribunal que dictara una orden dirigida a dicho demandado para impedirle cobrar los recibos expedidos, procediera a cancelar los embargos trabados y se abstuviera de llevar a cabo acto alguno tendente al cobro a los demandantes(³) de los recibos mencionados. La razón de pedir de los demandantes puede resumirse así: a) los dueños del inmueble embargado no son los contribuyentes a cuyo nombre se expidieron los recibos tantas veces mencionados; b) la ausencia de notificación a los demandantes de las deficiencias, ya en forma preliminar o final; y, c) en el supuesto de que pudiera decirse que el inmueble embargado pertenece a los contribuyentes, tampoco se les notificaron las deficiencias en forma preliminar o final a las dos entidades nombradas.

En el curso de los procedimientos, y ante la inminencia de una venta en pública subasta del inmueble embargado para satisfacer las contribuciones adeudadas, el tribunal de instancia, previa solicitud de los demandantes, expidió en 8 de noviembre de 1957, un injunction *pendente lite*. Sec-

---

(³) Figuraron como demandantes doña Asunción Negroni y su hija doña Otilia Lluberas de Cage; los hermanos Lluberas-Pasarell nombrados Antonia, Rosa Elena, Graciela, Celia y Raquel, y los miembros de la sucesión de don Manuel Francisco Lluberas Pasarell—fallecido con posterioridad a abril de 1954—compuesta por sus hijos María Cristina, Rosa Antonia y Gerónimo Lluberas Kells y su nieto Terry Muñoz Lluberas, en representación de su madre premuerta Laura Elena Lluberas Kells, fallecida en 1943.

En el acto de la vista se sustituyó como parte a doña Graciela Lluberas Pasarell, quien había fallecido en septiembre de 1957, por sus hijos Fernando, Graciela y Antonio Valenti Lluberas.

ción 57 (a) (10) de la Ley de Contribuciones sobre Ingresos de 1924, 13 L.P.R.A. secs. 775 (a) (10). (⁴) ▪

El Secretario de Hacienda admite que no se llevó a cabo el trámite de notificación de las deficiencias, pero sostiene que ello no era necesario debido a que las mismas habían sido aceptadas por el señor Domingo Gilormini, en su carácter de administrador y a nombre y en representación de dichas dos entidades, quien al efecto firmó sendos consentimientos para la tasación y el cobro de deficiencias en contribución. (⁵) Así lo resolvió el tribunal a quo, y en consecuencia, desestimó la petición de injunction. Se interpuso recurso de apelación en 15 de agosto de 1958, y aun cuando

---

(⁴) Corresponde a la sección 272 (a) (10) de la Ley de 1954, 13 L.P.R.A. sec. 3272 (a) (10); véanse, *Fuentes* v. *Srio. de Hacienda*, 80 D.P.R. 203 (1958) y *Fuentes* v. *Srio. de Hacienda*, 85 D.P.R. 492 (1962).

(⁵) Los documentos firmados fueron formas 482 utilizadas por el Departamento de Hacienda. Esta forma lee como sigue:

"Por la presente se renuncia a las restricciones impuestas por la Sección 57 de la Ley de Contribución sobre Ingresos y se consiente a la tasación y al cobro de la siguiente deficiencia en contribución:

Año contributivo terminado en 1950;
contribución ........................... $27,982.33
Más: Intereses al 6% anual sobre la deficiencia,
desde la fecha prescrita para el pago del primer plazo, hasta la fecha en que se efectúe
el pago ................................. ———————

Penalidades:

5% sobre la deficiencia debido a negligencia
o ignorancia intencional de las reglas y reglamentos pero sin la intención de cometer
fraude ................................. ———————

5% sobre la contribución por cada mes o fracción de mes de tardanza en la radicación.... ———————

Total contribución, intereses y
penalidades ......................... $———————

(Fdo.) ...................................
                                    Contribuyente
................................
                                    Dirección
Fecha......................."

el escrito presentado—que expone los fundamentos aducidos —no plantea una cuestión constitucional sustancial, *Soltero Peralta* v. *Srio. de Hacienda*, 86 D.P.R. 26 (1962),[6] consideraremos el recurso como uno de revisión. Sección 14(f) de la Ley de la Judicatura, según enmendada por la Ley Núm. 115 de 26 de junio de 1958, 4 L.P.R.A. (Supl. 1961), pág. 221. ■

1. Conforme a lo provisto en la sección 57(a)(1) de la Ley de Contribuciones sobre Ingresos de 1924, 13 L.P.R.A. sec. 775(a)(1), el Secretario de Hacienda está impedido de tasar una deficiencia o proceder a su cobro por la vía de apremio o judicialmente hasta que haya sometido al contribuyente una notificación de deficiencia. Sin embargo, en ciertas ocasiones, el cumplimiento de esta previa notificación está dispensado, *Ramos* v. *Srio. de Hacienda*, 85 D.P.R. 424 (1962), especialmente el escolio 1, siendo una de ellas la de la renuncia escrita por el contribuyente de las restricciones sobre tasación y cobro de deficiencias según prescrito en la actual sección 272(d) de la Ley de 1954, 13 L.P.R.A. sec. 3272(d). Ahora bien, una disposición similar no se incorporó a la Ley de 1924 hasta la aprobación de la Ley Núm. 9 de 8 de octubre de 1954 (Leyes, pág 123), mediante la cual se adicionó, entre otros, el inciso (f) sobre "renuncia de restricciones" a la mencionada sección 57, 13 L.P.R.A. sec. 775(f).[7] ■

Como dicha Ley Núm. 9 comenzó a regir en la misma fecha de su aprobación, se arguye que los documentos de renuncia en que se apoya el Secretario, firmados en 7 de abril anterior, no son efectivos. Ello equivaldría a sostener que con anterioridad a la adición del inciso (f) un contribuyente no podía renunciar a las restricciones sobre tasación y cobro de deficiencias por no existir disposición estatutaria que lo

---

[6] Colegio de Abogados, serie 1962, núm. 3.
[7] La ley federal incorporó una disposición similar por primera vez en la Ley de Rentas Internas de 1926, sección 274(d), 44 Stat. 56.

autorizara. No obstante, a poco que examinemos el problema, convendremos que tal solución no es ni adecuada ni lógica. El propósito de la notificación preliminar y final de deficiencias, según exigido por la sección 57(a)(1), no es otro que permitir al contribuyente la oportunidad de discutir su responsabilidad contributiva, bien administrativamente, si opta por la celebración de una vista ante el Negociado, o judicialmente, si prefiere recurrir a los tribunales para revisar la determinación administrativa. En todo caso, no viene obligado a pagar la deficiencia, y la exigencia adicional mayor que se establece en la etapa judicial es la de afianzamiento. Pero cuando el contribuyente acepta la determinación y renuncia a la notificación, es porque simplemente está dispuesto a pagar la deficiencia determinada. Recibe el beneficio de que no paga intereses "hasta el trigésimo día siguiente a la fecha de la radicación de dicha renuncia o hasta el día en que la deficiencia tasada, cualquiera de ellos que sea el anterior." Sección 57(d) de la Ley de 1924, 13 L.P.R.A. sec. 775(d); sección 292 de la Ley de 1954, 13 L.P.R.A. sec. 3292, y además le permite pagar la contribución—evitando así que se acumulen más intereses, sin que por otro lado pierda la oportunidad de impugnarla judicialmente mediante la correspondiente acción de reintegro. La sección 57(a)(1) en fin de cuentas garantizaba al contribuyente el derecho a que no se le tasara la contribución antes de recurrir a los tribunales o de que expirara el término que para ello le concede la ley.(8) Aun en ausencia de estatuto que lo autorice expresamente, cualquier renuncia a este derecho era perfectamente admisible, por no ser contra la ley, el interés o el orden público, o en perjuicio de tercero, artículo 4 del Código Civil, ed. 1930, 31

---

(8) En *United States* v. *Price*, 361 U.S. 304 (1960) se sostuvo que la renuncia puede hacerse válidamente antes de que se notifique la deficiencia, resolviendo así el conflicto surgido entre el Sexto Circuito (*Moore* v. *Cleveland Ry. Co.*, 108 F.2d 656 (C.C.A. 6, 1940)) y el Noveno Circuito (*Mutual Lumber Co.* v. *Poe*, 66 F.2d 904 (C.C.A. 9, 1933)).

L.P.R.A. sec. 4; cfr. *Bertelsen & Petersen Engineering Co.*
v. *United States*, 60 F.2d 745 (CCA 1, 1932) ; *Warner Sugar
Refining Co.*, 4 B.T.A. 5 (1926). Véase, Mertens, *Law of
Federal Income Taxation*, (1958), vol. 10, § 57.44, pág. 84.

2. Se impugna además la facultad de don Domingo Gi-
lormini para obligar a las dos entidades "Sucesión Lluberas"
y "Arturo Lluberas y Sobrinos" mediante la firma de las
formas sobre consentimiento para la tasación y cobro de de-
ficiencias.(⁹)   Es preciso dar una ojeada a la prueba pre-
sentada sobre este aspecto del litigio.

Don Domingo Gilormini era el administrador de los ne-
gocios de ambas empresas, cargo que ocupaba desde fecha an-
terior al deceso de don Arturo Lluberas.   Como parte de
sus deberes administrativos firmó y radicó las declaraciones
de ingresos de "Arturo Lluberas y Sobrinos" desde 1943
hasta 1948, y desde 1949 hasta 1953, las planillas de "Su-
cesión Lluberas" y "Arturo Lluberas y Sobrinos."   En casi
todas las declaraciones rendidas se consignó que los libros
de la "sociedad" estaban a su cargo.   En 13 de enero de 1945
se dirigió al Secretario de Hacienda solicitando autorización
a nombre de "Arturo Lluberas & Sobrinos" para cambiar el
año contributivo que terminaba en junio 30 al sistema de
año natural, "debido a que las zafras se liquidan con re-
traso"; en 7 de marzo de 1955 solicita una prórroga para la
radicación de las declaraciones de ingresos de ambas em-
presas.   Durante todo este tiempo es además administrador
de la comunidad Hermanos Lluberas Pasarell y de casi todos
sus miembros, y a nombre de éstos firma y rinde las corres-
pondientes declaraciones de ingresos.

Participó, conjuntamente con el señor Cage, en las dis-
cusiones durante la investigación practicada por el inspec-
tor de contribución sobre ingresos.   Concluida la investiga-

---

(⁹) La importancia de este planteamiento reside en que si prospera,
el Secretario estaría impedido de notificar ahora las deficiencias deter-
minadas por haber transcurrido el término de 7 años provisto por la
sección 60 (a) (1) de la Ley de 1924, 13 L.P.R.A. sec. 778 (a) (1).

ción, se le comunicó el resultado de los ajustes hechos por el representante del Secretario de Hacienda y de las deficiencias resultantes. Gestionó y logró que no se incluyeran penalidades por negligencia intencional. El 7 de abril de 1954 firmó documentos de renuncia a las restricciones para la tasación y cobro de deficiencias. Aunque no se hizo constar a continuación de su firma que lo hacía en representación de las empresas, en cada una de las formas, el señor Cage llenó los blancos correspondientes a la identificación del año contributivo y el importe de la deficiencia, que concuerda exactamente con las cantidades que hemos detallado al comienzo de esta opinión. Además, coetáneamente con la firma de las renuncias (*waivers*), aceptó las deficiencias determinadas a "Sucesión Lluberas" para el año 1951 y a "Arturo Lluberas y Sobrinos" para los años 1950, 1951 y 1952, expidiendo y firmando en el acto a nombre y contra la cuenta bancaria de las empresas los cheques correspondientes para su pago.

Conviene además advertir que mediante escrituras públicas de otorgamiento o protocolización de poder notarizadas entre octubre de 1953 y marzo de 1954, actuaba como mandatario de doña Asunción Negroni viuda de Lluberas, doña Otilia Lluberas Negroni, doña Raquel Lluberas Pasarell, don Manuel Francisco Lluberas Pasarell, y doña Graciela Lluberas Pasarell. Todas las partes poderdantes, después de manifestar ser condueñas de la central azucarera que opera con el nombre de "Central San Francisco" y también con el de "Arturo Lluberas y Sobrinos," autorizaron al señor Gilormini a que "represente a dicha Central ante todos los Departamentos, Agencias, Autoridades y Funcionarios del Gobierno Federal y sus Tribunales, y del Gobierno del Estado Libre Asociado de Puerto Rico y sus Tribunales . . . llene, jure, rinda y radique ante las autoridades competentes, y ante las asociaciones, corporaciones o personas que fuere pertinente, informes, planillas y demás documentos necesarios."

Mertens, *op. cit.*, vol. 10, § 57.60, indica que en relación con las renuncias contributivas (*waivers*) se ha impuesto un criterio de interpretación liberal de los principios generales de agencia. Esa trayectoria ha sido uniformemente seguida en la escasa jurisprudencia sobre el particular. En *United States v. Krueger*, 121 F.2d 842 (CCA 3, 1941) se impugnó una renuncia firmada a nombre de una corporación íntima (*closed corporation*) por un director que actuaba como síndico liquidador. Al desestimar la impugnación, el tribunal expresó que la facultad para renunciar las limitaciones para la tasación y cobro de deficiencias está incluida dentro del poder concedido a las corporaciones para liquidar sus asuntos y distribuirse el activo sobrante entre los accionistas; que un liquidador está autorizado implícitamente a realizar las gestiones necesarias para reducir la responsabilidad contributiva de la corporación; y finalmente consideró como índice de la facultad para firmar la renuncia a nombre de la corporación, el hecho de que el director había firmado la declaración de ingresos a nombre de ésta, la había representado en reuniones celebradas para discutir las deficiencias y había firmado el cheque en pago de las mismas. Véanse también, *Liberty Baking Co. v. Heiner*, 37 F.2d 703 (CCA 3, 1930); *Philip Carey Mfg. Co. v. Dean*, 58 F.2d 737 (CCA 6, 1932) (intervención en discusión para el ajuste de las deficiencias); *Hammond v. Carthage Sulphite Pulp & Paper Co.*, 34 F.2d 155 (N.D. N.Y. 1928) (firma de las declaraciones de ingresos e intervención en la discusión de las deficiencias). Y en *Independent I. & C. Storage Co. v. Commissioner of Internal Revenue*, 50 F.2d 31 (C.C.A. 5, 1931) se dice que es inconcebible que pueda sostenerse que una persona tenía facultad para firmar una declaración de ingresos a nombre de una corporación, y evitar así la imposición de una penalidad por no radicar planilla, y luego se niegue la autoridad de esa misma persona para suscribir una renuncia en relación con la contribución a imponerse

como resultado de la investigación de la planilla. Cfr. *Jaffee* v. *Commissioner of Internal Revenue*, 45 F.2d 679 (CCA 2, 1930); *Piedmont Wagon & Mfg. Co.* v. *United States*, 6 F. Supp. 125, 129 (Ct. Cl. 1934) y *Central Aguirre Sugar Co.* v. *United States*, 2 F. Supp. 538, 544 (Ct. Cl. 1933). ■

Convenimos con el tribunal de instancia que todo el cuadro de los hechos indica, sin lugar a dudas que el señor Gilormini estaba facultado para firmar las renuncias de las restricciones para la tasación y cobro de las deficiencias de ambas empresas, y que, por tanto, era innecesaria la notificación de las mismas según dispuesto en la sección 57(a)(1). Se desprende que el señor Gilormini era un administrador con amplios poderes, con facultad para representar a las empresas en los asuntos relacionados con la rendición de declaraciones de ingresos, pago de contribuciones y ajuste de la responsabilidad contributiva; que como tal, no sólo suscribió y juró las planillas, sino que intervino en las discusiones con el representante del Secretario durante la investigación, aceptó parte de las deficiencias determinadas y las pagó. ■

Como una empresa común es *para fines contributivos* una entidad separada y distinta de las personas que la componen, *Calaf* v. *Sec. Hacienda*, 76 D.P.R. 577, 581 (1954), no era necesario notificar individualmente a los miembros que la componen. La renuncia a nombre de las empresas era todo cuanto se requería para que el Secretario pudiera tasar las deficiencias. Esto en forma alguna significa que en cuanto al *pago* de las deficiencias tasadas los componentes de estas entidades puedan escudarse en el hecho de que los bienes no aparecen inscritos a nombre de éstas, sino que les pertenecen individualmente. Después de todo, el Secretario ha sido guiado por las propias declaraciones de las contribuyentes que relacionan como sus miembros a las personas que tienen inscrito a su favor el inmueble embargado.

Las otras cuestiones planteadas por la parte recurrente no merecen seria consideración y dependen de lo resuelto precedentemente.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 11 de julio de 1958.*