COMUNIDAD DE JOSÉ FERNÁNDEZ, ETC., ET AL., demandantes y recurrentes, *v.* SECRETARIO DE HACIENDA, demandado y recurrido.

*Número:* R-67-1      *Resuelto:* 16 de febrero de 1968

*Rafael Martínez Álvarez, Jr., Víctor M. Fusté* y *Armando Lasa Ferrer,* abogados de los recurrentes; *J. B. Fernández Badillo, Procurador General,* y *Lolita Miranda de Escudero,* Procuradora General Auxiliar, abogados del recurrido.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Dávila y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El Secretario de Hacienda preparó de oficio unas planillas de contribución sobre ingresos a la "Comunidad José Fernández Rodríguez (Sociedad)." Le notificó deficiencias en la contribución correspondiente a los años 1959, 1960 a 1963. Los herederos de José Fernández Rodríguez habían incluido en sus planillas individuales las rentas que les correspondían a cada uno de ellos de dos edificios que poseían en la ciudad de Caguas. El Secretario sostiene que debían haber rendido planillas como sociedad o empresa común. Así, la cuestión a resolver es si la relación existente entre los condueños era una social o por el contrario eran meros comuneros. No hay

discrepancia sobre los hechos, sólo la hay sobre su interpretación.

Las partes estipularon los hechos. El juez sentenciador los relata así:

"Los esposos José Fernández Rodríguez y Prima Lema Cuervo eran dueños de dos propiedades sitas en la Calle Betances Núm. 73 y Calle Betances Núm. 75, Esq. Muñoz Rivera de la Ciudad de Caguas, Puerto Rico.

Al fallecimiento de José Fernández Rodríguez, le sucedieron su viuda Prima Lema Cuervo y sus hijos José, Francisco, Manuel, María C., María Dolores y Jesús, todos de apellido Fernández Lema.

Pagada la contribución sobre herencia, se procedió a la partición, liquidación y adjudicación de la herencia mediante la escritura Núm. 30, de 15 de septiembre de 1938, otorgada ante el Notario Rafael Cintrón Lastra.

En pago de su haber se le adjudicó a la viuda el 50% de cada propiedad, habiendo ella renunciado a la cuota usufructuaria. A cada uno de los hijos le correspondió 1/6 parte del restante 50% de cada una de dichas propiedades.

Con anterioridad al 1959 los demandantes procedieron a destruir la estructura ubicada en la Calle Betances Núm. 75 y en su lugar se construyó un edificio a un costo de $60,000, mediante la aportación de cada uno de ellos de $10,000.00.

El beneficio producto de esta propiedad se distribuyó, a partir de esa fecha, entre los demandantes, de acuerdo con la aportación de cada uno de los participantes, habiendo renunciado la viuda a ello por escritura Núm. 37 de 14 de abril de 1954, ante el Notario Alfonso Miranda Cárdenas, ratificada por la Núm. 62, de 21 de octubre de 1954, ante el mismo Notario.

En cuanto a la propiedad sita en la Calle Betances Núm. 73 con anterioridad a 1959, fue reconstruida por los demandantes. En relación con esta edificación la viuda no aportó dinero alguno pero retuvo su participación en la misma. El beneficio de cada uno de los demandantes se determinó de acuerdo con su inversión en la reconstrucción resultando aproximadamente de 1/6 parte.

Las dos propiedades a que hemos hecho referencia, ubican en solares propiedad del Municipio de Caguas, Puerto Rico.

Cabe mencionar, que una vez realizada la partición de herencia a que hemos aludido anteriormente, la mencionada comunidad

era administrada por Manuel y Jesús Fernández Lema a tenor con las escrituras de poder Núm. 18 y 89 otorgadas ante los notarios Joaquín Vendrell Jousert y Alfonso Miranda Esteves, respectivamente, y·que existía una cuenta corriente en el banco a nombre de la Sucesión José Fernández Rodríguez en donde se depositaban los ingresos que por concepto de rentas producían las susodichas propiedades. Que todos los gastos de estas propiedades se pagaban con cargo a esa cuenta corriente.

Según los libros de contabilidad a los ingresos obtenidos se le descontaban las cargas, dividiéndose el remanente entre los miembros de la llamada Sucesión.

Aparece también que los apoderados Manuel Fernández Lema y Jesús Fernández Lema eran los autorizados a retirar los fondos de la antes mencionada cuenta corriente."

La Ley de Contribuciones Sobre Ingresos de 1954 define la sociedad como que "incluye sociedades civiles, mercantiles, industriales, agrícolas, profesionales o de cualquier otra índole, regulares, colectivas o en comandita, conste o no·su constitución en escritura pública o documento jurado; e incluirá además a dos o más personas que se dediquen, bajo nombre común o no, a una empresa común con fines de lucro." 13 L.P.R.A. sec. 3411(a)(3), ed. 1962.

En *Puig* v. *Tribunal de Contribuciones*, 65 D.P.R. 734 (1946) al considerar un caso en que estaba envuelta la misma cuestión y vigente una disposición similar a la arriba transcrita, expusimos: "Está bien establecido que la mera comunidad de bienes no constituye una empresa común para fines de lucro. *Chisholm* v. *Gilmer*, 81 F.2d 120 (C.C.A. 4th. 1936) y *Bowmaster* v. *Carrol*, 23 F.2d 825 (C.C.A. 8th. 1928). Para que la constituya es preciso que sin formarse una verdadera sociedad, los dueños de los condominios los aporten para dedicarse, con fines de lucro, a una determinada operación; que participen todos en las pérdidas y ganancias; que haya entre ellos la relación fiduciaria que existe entre los socios, de suerte que cada uno sea mandatario de los demás en lo que respecta a cualquier gestión

comprendida dentro del ámbito de la empresa común, teniendo así cada uno voz y voto en su administración, si bien pueden convenir que uno o más de ellos asuman la gestión del negocio en representación de los demás tal y como sucede con las sociedades. *Porter* v. *Cooke*, 127 F.2d 853 (C.C.A. 5th, 1942); *Beck* v. *Cagle*, 115 P.2d 613 (Cal. 1941); *Detachable Bit Co.* v. *Timken Roller Bearing Co.*, 133 F.2d 632 (C.C.A. 6th, 1943); *Howard* v. *Societa Di Unione E Beneficenza Italiana*, 145 P.2d 694 (Cal. 1944); 35 Mich. L. Rev. 297 y 58 U. of Pa. L. Rev. 309."

En el caso de *Puig* los hechos establecieron que dos personas compraron un edificio que luego lo alquilaron y se dividían las rentas entre sí. En *Buscaglia* v. *Tribunal de Contribuciones, Certiorari* 73 resuelto por opinión *per curiam* el 12 de abril de 1946, fuimos un poco más lejos. Los hechos eran muy similares a los del presente. Se destruyó una casa por estar en ruinas y los dueños, quienes la habían heredado, construyeron una casa de apartamientos los cuales alquilaban y percibían rentas. Al resolver la cuestión planteada expresamos que "esos hechos sólo demuestran que los contribuyentes heredaron un solar en el que estaban enclavadas unas casas en ruinas, las cuales destruyeron, y en su lugar construyeron una nueva edificación, la cual poseen en comunidad. Estos hechos, sin más, no establecen una empresa común con fines de lucro. . . ."

En *Vías* v. *Tribl. de Contribuciones*, 67 D.P.R. 491 (1947) "los peticionarios, . . . heredaron de su padre en el año 1938, una finca rústica, una casa sita en la calle Cruz número 21 y un condominio consistente de la mitad de la casa que lleva el número 42 en la calle Salvador Brau, ambas de San Juan. El Tribunal de Contribuciones en su opinión hizo constar que consideraba probado que: '. . . no satisfechos con las condiciones ruinosas en que se encontraba la casa ubicada en la calle Cruz 21, así como tampoco con las rentas que de ella percibían, procedieron a derrumbar el edificio

de dos pisos que allí existía a la fecha de la muerte de su padre y a la fecha de la partición de bienes, y a edificar, en su lugar, un edificio nuevo y de cuatro pisos. Para ello tomaron la suma de $24,000 de su madre a cambio de una pensión vitalicia, y además las cantidades de $15,000, $13,000 y $750 del Banco Popular de Puerto Rico. Consiguieron un ingeniero-contratista para que les hiciera un plano de la obra y les diera las especificaciones de la misma. El contrato original que firmaron en relación con ese trabajo fue por la suma de $37,000 y por trabajos adicionales por el monto de $11,900. Tienen un apoderado para que a nombre y en representación de todos ellos alquile los locales que hay en dicho edificio, contrate y pague las reparaciones y otros gastos relacionados con el mismo, y envíe mensualmente a cada uno de los apelantes la participación que de una tercera parte le pertenece del producido neto de las rentas de dicho edificio.' "

Con estos hechos, tan similares a los del presente caso, sostuvimos que la relación existente entre los herederos de don Juan F. Vías no era una de empresa común. Al resolverlo expresamos:

"El Tribunal de Contribuciones distingue el caso de *Buscaglia* v. *Tribunal de Contribuciones,* supra, del de autos por el hecho de que en aquél el edificio fue construido con fondos de la sucesión, y en el de autos con fondos del propio peculio de los miembros de la sucesión. Al hacer esta distinción dicho tribunal no cita autoridad alguna. A nuestro juicio la procedencia de los fondos no es determinativa de si la relación existente entre los individuos es una de mera comunidad de bienes o de empresa común, como tampoco lo sería para determinar si es la de una sociedad. La norma es la que establece el caso de *Puig* v. *Tribunal,* supra, al efecto de que exista entre los participantes la relación fiduciaria que existe entre los socios de suerte que cada uno sea mandatario de los demás en lo que respecta a cualquier gestión comprendida dentro del ámbito de la empresa común, teniendo así cada uno voz y voto en su administración, si bien pueden convenir que uno o más de ellos asuman la gestión del

negocio en representación de los demás, tal y como sucede con las sociedades. Es más, los hechos en el caso de *Puig* demuestran que Cristóbal Puig y Gabriel Abraham adquirieron por compra, en común pro indiviso, dos casas en San Juan, y luego las arrendaron a una sociedad pero que 'la gestión de cada uno de ellos se reducía a percibir el aprovechamiento de su propiedad, o sea el canon de arrendamiento de sus respectivos condominos . . . .' Es de presumirse que al comprar dichas casas, Puig y Abraham, lo hicieron con su propio peculio, pero ese hecho, en sí, no fue determinativo de que al arrendar sus condominios y percibir sus rentas ellos establecieran una empresa común con fines de lucro."

■ Es conveniente apuntar que conociendo nuestro criterio expuesto en *Puig, Buscaglia* y *Vías*, la Asamblea Legislativa, como hemos visto, no alteró el concepto del término "sociedad" al aprobar la nueva ley en el año 1954. El Reglamento aprobado para implementarla tampoco altera el concepto del término "empresa común" que interpretamos en esos casos. Establece el Reglamento:

"Para los fines de la contribución sobre ingresos, las sociedades, en términos generales, se tratan en la misma forma y están sujetas a las mismas disposiciones que las corporaciones. En otras palabras, una sociedad está obligada a rendir la planilla de sus ingresos como una entidad, y la contribución normal y la contribución adicional se pagan sobre el ingreso neto, sujeto a contribución, de la sociedad. Incluida en el término 'corporación' según se usa en la ley están las sociedades limitadas, las compañías anónimas de responsabilidad limitada, las corporaciones privadas y las compañías de seguros u otras organizaciones que reciban ingresos u obtengan beneficios tributables bajo la Ley. El término 'sociedad' se define para incluir, no solamente las sociedades civiles, mercantiles, industriales, agrícolas o profesionales, sino también todas las otras sociedades, e incluye dos o más personas dedicadas a una empresa común con fines de lucro."

La norma sentada en *Puig* y ratificada en *Vías* está acorde con el tratamiento que han recibido relaciones similares en la aplicación de la Ley de Contribuciones de Ingreso Federal.

Si bien en la jurisdicción federal a la sociedad (*partnership*) como tal no se le impone una contribución sobre ingresos como lo hace nuestra ley, 13 L.P.R.A. secs. 3013 *et seq.*, ed. 1962, recibe un tratamiento particular, ver *Newberger* v. *Commissioner*, 311 U.S. 83, 88 (1940); Rabkin and Johnson, *Federal Taxation of Partnerships*, 55 Harv. L. Rev. 909 (1942); 6 Mertens, *Law of Federal Income Taxation*, sec. 35.01 (1957); Jackson et al., *The Internal Revenue Code of 1954: Partnership*, 54 Colum. L. Rev. 1183 (1954), que resulta de importancia determinar si la relación de negocios existente entre dos o más personas, constituye una sociedad (*partnership*) o si por el contrario son meramente co-propietarios o comuneros. En *Estate of Edgard S. Appleby*, 41 B.T.A. 18 (1940), confirmado en *Commissioner of Internal Rev.* v. *Appleby's Estate*, 123 F.2d 700 (2d Cir. 1941) se presentó la cuestión, cuando los herederos de Appleby destruyeron un edificio que habían heredado y en su lugar construyen un garage que luego alquilaron. Al resolver la cuestión se expuso el problema envuelto así:

"El apelante alega que los peticionarios, copropietarios de una propiedad heredada de su padre, y aceptando que no son socios bajo la ley de Nueva York, estaban explotando la propiedad como una empresa comercial y caían por lo tanto dentro de la categoría estatutaria de sociedad. Acepta que los peticionarios no constituían un sindicato o una mancomunidad, pero alega que ellos 'constituían un grupo' que, por su decisión de eregir y operar un garage . . . se convirtieron en una empresa común y que la frase 'inclusive todas las otras organizaciones no incorporadas' es lo suficientemente amplia para incluir a éstas. El término estatutario sociedad dice, 'cubre cualquier operación financiera o comercial llevada a cabo por dos o más individuos que no sea un fideicomiso, una corporación o una sucesión.'

La comunidad de bienes inmuebles es una condición tan antigua y conocida que es imposible entender que la intención fuera incluirla en la relación estatutaria de sociedades dentro de términos tan generales como lo son, 'grupo', 'empresa común' u 'otra organización'. Nunca hasta donde tenemos conocimiento, se ha considerado sujeta a contribución como una clase de con-

tribuyente, aunque su existencia ha sido siempre reconocida. Cf. I.T. 1604, II-1 C.B. 1 (1923) ; I.T. 2082, II-2 C.B. 176 (1924). Si se fuera a considerar como una sociedad estatutaria, debido a la íntima relación de los propietarios y su interés común en la propiedad, sería difícil excluir del término estatutario otras relaciones con atributos similares, tales como comunidades por razón del matrimonio . . . cf. *Poe* v. *Seaborn,* 282 U.S. 101; *Tyler* v. *United States,* 281 U.S. 497; *Champlin* v. *Commissioner,* 71 Fed. 2d 23. Esto no lo sugiere expresamente el Comisionado y debe existir alguna autoridad dando un claro apoyo para una innovación de tanto alcance e importancia, aunque por otro lado el término estatutario no debe ser estrecha o rígidamente interpretado. Cf. *Morrissey* v. *Commissioner,* 296 U.S. 344; *Pinellas Ice and Cold Storage Co.* v. *Commissioner,* 287 U.S. 462.

Aunque probablemente persistirá la dificultad de clasificar muchas de las relaciones comerciales concebibles en que más de una persona participa, hay alguna ayuda en el informe del Comité de Finanzas del Senado, al proponer el estatuto de 1932. Esto claramente indica que el nuevo estatuto fue confeccionado principalmente para proveer una categoría más definida para sindicatos y organizaciones similares a éstos, para mancomunidades y empresas comunes, que habían presentado dificultades en la tributación de su ingreso. La cuestión de si se puede decir que el ingreso derivado por un grupo organizado de co-propietarios en la operación de un negocio o comercio, ha de ser resuelta cuando tal controversia se plantee propiamente en un caso."

En Lulu Lung Powell, 67,032 P.H. Tax Ct. Mem., resuelto el 20 de febrero de 1967, recientemente el Tribunal de Contribuciones federal tuvo ante sí una situación parecida a la del caso de autos. Unos hermanos poseían doce parcelas de terreno, las arrendaron y contrataron una persona para que le cobrara las rentas. Además de realizar ciertas reparaciones, radicaron una planilla de contribución sobre ingresos como si constituyeran una sociedad. El tribunal luego de citar del caso de *Appleby,* expresó:

"El mismo razonamiento es aplicable en este caso. Si nosotros determinamos que existe una sociedad bajo estos nuevos

hechos, destruiríamos la separación válida, para efectos contributivos, de casi todas las formas de co-propiedad. La debilidad de la contención del demandado se hace evidente por los hechos inocuos en que él tiene que enfatizar, para demostrar la actividad comercial. Nosotros entendemos que su posición era más razonable en *Lena* v. *Hahn,* 22 T.C. 212 (1954) en donde bajo hechos similares, incluyendo la radicación de una planilla de reembolso correspondiente a una sociedad y en donde uno de los co-propietarios administraba personalmente la propiedad y era compensado por sus actividades, sostuvimos la determinación del demandado de inexistencia de una sociedad. Aquí igualmente encontramos que no existía sociedad alguna en 1960 entre la peticionaria y sus hermanos y hermanas con respecto a las propiedades poseídas por ellos como co-propietarios bajo el nombre de la Sucesión de Dora Lung."

El Reglamento federal vigente es mucho más explícito y abarcador que la disposición reglamentaria nuestra. Dispone así:

"(a) Sociedades—(1) En General.

El término 'sociedad' incluye un sindicato, grupo, mancomunidad, empresa común u otra organización no incorporada a través o por medio de la cual cualquier negocio, operación financiera o empresa es llevada a cabo y que no es una corporación o fideicomiso o sucesión dentro del significado del Código. El término 'sociedad' es más amplio en alcance que el significado de 'sociedad' en el derecho común y puede incluir grupos que comúnmente no caen bajo 'sociedad'. Ver sección 7701(a)(2). Ver disposiciones bajo sección 7701(a)(1), (2) y (3) para la descripción de organizaciones no incorporadas sujetas a contribución como corporaciones o fideicomisos. Una asociación organizada meramente para cubrir gastos no es una sociedad. Por ejemplo, si dos o más personas se asocian para construir un dique, meramente para drenar agua de sus propiedades ellos no son socios. Mera coparticipación en una propiedad que es poseída y mantenida reparación y es alquilada o arrendada no constituye una sociedad. Por ejemplo si un dueño individual o co-propietarios de una finca la arriendan a un agricultor por una renta líquida o por una participación en la cosecha, con eso no crean necesariamente una sociedad. Sin embargo, co-propietarios pueden ser

socios si ellos activamente llevan a cabo un negocio, comercio, operación financiera o empresa y se dividen las ganancias. Por ejemplo, una sociedad existe si los co-dueños de un edificio de apartamientos los alquilan y en adición proveen servicios a sus inquilinos, ya sea directa o indirectamente a través de un agente." Cita: Sec. 1761-1, Terms Defined Tit. 26 Code of Federal Regulations, Internal Revenue (Revised as of Jan. 1967).

Hemos visto que de acuerdo con *Puig, Vías, Appleby* y *Powell,* ni la procedencia de los fondos utilizados en la construcción de la edificación, ni el hecho de que tengan un apoderado, así como que mantengan una cuenta bancaria común, en modo alguno es determinante para resolver si la relación entre dos o más personas es social o de mera comunidad de bienes. Tampoco lo es el que disfruten de los solares en usufructo. La Ley Núm. 53 de 1928 en su Art. 70 autorizaba a conceder el usufructo a perpetuidad al concesionario y a sus sucesores en título. Ver *Jiménez* v. *Álvarez,* 69 D.P.R. 323–330 (1948). Siguiendo lo resuelto en los citados casos es forzoso concluir que las actividades a que se han dedicado los componentes de la Comunidad de José Fernández y que han sido objeto de consideración en este caso no constituye una empresa común a los efectos de la Ley de Contribuciones Sobre Ingresos.

El caso de *Sucesión Castillo* v. *Descartes, Srio. de Hacienda,* 83 D.P.R. 98 (1961) en el que fundamenta su decisión el tribunal de instancia es claramente distinguible. Allí los miembros de la Sucesión Castillo operaban una serie de negocios: fincas de caña de azúcar, ganadería, frutos menores, rentas de casas y extracción y venta de piedras, que definitivamente colocaban sus relaciones dentro del concepto jurídico de la empresa común.

*Se revocará la sentencia recurrida.*